Santos Gomez (Cal. SBN 172741)
Maria Esmeralda Vizzusi (Cal. SBN 289908)
Dawson Morton (Cal. SBN 320811)
**LAW OFFICES OF SANTOS GOMEZ**
1003 Freedom Boulevard
Watsonville, CA 95076
Ph: 831-228-1560
Fax: 831-228-1542
santos@lawofficesofsantosgomez.com
esmeralda@lawofficesofsantosgomez.com
dawson@lawofficesofsantosgomez.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM MIGUEL-SANCHEZ, LUIS ANTONIO MEZA-ESTRADA, and SERGIO JIMENEZ-CRUZ and others similarly situated,<br><br>                                   Plaintiffs,<br><br>        vs.<br><br>MESA PACKING, LLC,<br><br>        Defendants. | Class Action Case No. 5:20-cv-823-VKD<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CONSENT JUDGMENT AND STIPULATION FOR CLASS ACTION SETTLEMENT, AFFIRMATIVE RELIEF, AND RELEASE OF CLAIMS**<br><br>Date: February 16, 2021<br>Time: 10:00 A.M.<br>Ctrm: Courtroom 6, U.S. District Court, 280 South First St., 4th Floor, San Jose, CA |

Please take notice that, on February 16, 2021, at 10:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 2 of the San Jose Courthouse, located at 280 South First St., 5th Floor, San Jose, California, William Miguel-Sanchez, Luis Antonio Mesa-Estrada, and Sergio Jimenez-Cruz ("Plaintiffs") will and hereby do move for an order granting preliminary approval of the class action settlement reached with Mesa

Packing, LLC ("Defendant" or "Mesa").  As used here, "Parties" refers to Plaintiffs and Defendant, collectively. Specifically, Plaintiffs move for an order:

1.    Granting preliminary approval of the Consent Judgment and Stipulation for Class Action Settlement, Affirmative Relief, and Release of Claims ("Settlement") and preliminarily finding the terms of the Settlement to be fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, including the amount of the settlement fund; non-monetary relief regarding Defendant's employment practices; the amount of distributions to class members; the procedure for giving notice to class members; the procedure for objecting to or opting out of the Settlement; and the maximum amounts allocated to an incentive payment, costs and attorney's fees.

2.    Preliminarily certifying for settlement purposes, the Settlement Class described in the Settlement, comprised of 701 persons that worked for Defendant as non-exempt piece rate workers during the period of February 4, 2016 to October 23, 2020.

3.    Appointing Plaintiffs as representative for the Settlement Class.

4.    Appointing Dawson Morton and Santos Gomez of Law Offices of Santos Gomez as counsel for the Settlement Class.

5.    Appointing Atticus Administration, LLC as the Settlement Administrator.

6.    Directing the Settlement Administrator to provide notice to class members as set forth in the Settlement.

7.    Establishing the deadlines for members of the Settlement Class to opt out of the settlement or to object to the Settlement.

8.    Scheduling a final approval and fairness hearing on a date approximately 130 days after preliminary approval of the Settlement to consider whether the Settlement should be finally approved as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure and to rule on the motion for attorney's fees, costs and incentive payments to be submitted by Plaintiffs.

Plaintiffs' motion is made under Rule 23 of the Federal Rules of Civil Procedure

on the grounds that the Settlement is fair, reasonable and adequate and is based on this Notice and attached Memorandum of Points and Authorities; the Consent Judgment and Stipulation for Class Action Settlement, Affirmative Relief, and Release of Claims, and the Declarations of Dawson Morton and Santos Gomez submitted herewith; all other pleadings and papers on file in this action; and any oral argument or other matter that the Court may consider.

Dated:  January 22, 2021          LAW OFFICES OF SANTOS GOMEZ


By: s/ *D. Morton*
Dawson Morton
Attorneys for Plaintiffs and the Settlement Class

Santos Gomez (Cal. SBN 172741)
Maria Esmeralda Vizzusi (Cal. SBN 289908)
Dawson Morton (Cal. SBN 320811)
LAW OFFICES OF SANTOS GOMEZ
1003 Freedom Boulevard
Watsonville, CA 95076
Ph: 831-228-1560
Fax: 831-228-1542
santos@lawofficesofsantosgomez.com
esmeralda@lawofficesofsantosgomez.com
dawson@lawofficesofsantosgomez.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM MIGUEL-SANCHEZ, LUIS ANTONIO MEZA-ESTRADA, and SERGIO JIMENEZ-CRUZ and others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>MESA PACKING, LLC,<br>        Defendants. | Class Action Case No. 5:20-cv-823-VKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CONSENT JUDGMENT AND STIPULATION FOR CLASS ACTION SETTLEMENT, AFFIRMATIVE RELIEF, AND RELEASE OF CLAIMS**<br><br>Date:  February 16, 2021<br>Time: 10:00 A.M.<br>Ctrm: Courtroom 6, U.S. District Court, 280 South First St., 4th Floor, San Jose, CA |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

SUMMARY OF SETTLMENT TERMS................................................................2

THE SETTLEMENT MERITS PRELIMINARY APPROVAL...................................4

 A. Plaintiffs' Claims Merit Class Action Treatment .................5

  1. Numerosity .................................................5

  2. Commonality .................................................6

  3. Typicality .................................................7

  4. Adequate Representation ...........................................8

  5. Predominance of Common Questions ........................8

  6. Superiority .................................................9

 B. The Settlement is Fair, Reasonable and Adequate..............13

  1. Gross Settlement Amount .......................................14

  2. Attorney's Fees and Costs .......................................16

  3. Incentive Payment .................................................17

  4. Cy Pres Award  ………………………………… 18

  5. The Class Notice.................................................19

THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING ...…………..20

CONCLUSION .................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

## CASES

Acosta v. Trans Union LLC
  (C.D. Cal. 2007) 243 F.R.D. 377 ................................................................. 5

Amchem Products Inc. v. Woodward
  (1997) 521 U.S. 591 ............................................................................. 13

Bedolla v. Allen, 736 F. App'x 614 (9th Cir. 2018) .................................... 18

Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245 (N.D. Cal. 2015) ........................ 17, 21

Black v. T-Mobile USA, Inc., 2019 U.S. Dist. LEXIS 123676 (N.D. Cal. July 24, 2019) .. 21, 23

Blackie v. Barrack, 524 F.2d 905 (9th Cir. 1975) ...................................... 8

Bower v. Cycle Gear, Inc., 2016 U.S. Dist. LEXIS 112455 (N.D. Cal. Aug. 23, 2016) ............ 21

Cal Rural Legal Assistance, Inc. v. Legal Servs. Corp.
  (9th Cir. 1990) 917 F.2d 1171 ............................................................. 10

Camilo v. Ozuna, 2019 U.S. Dist. LEXIS 83794 (N.D. Cal. May 16, 2019) ............. 8, 12, 13, 15

Camilo v. Ozuna, 2020 U.S. Dist. LEXIS 57435 (N.D. Cal. April 1, 2020) ............................ 24

Ching v. Siemens Indus., Inc., 2014 U.S. Dist. LEXIS 89002 (N.D. Cal. June 27, 2014) ..... 5, 21

De Leon v. Ricoh USA, Inc., 2019 U.S. Dist. LEXIS 204442 (N.D. Cal. Nov. 25, 2019) .. 12, 13

Elkins v. Equitable Life Ins. Of Iowa
  (M.D. Fla. 1998) 1998 WL 133747 ........................................................... 14

Gomez-Gasca v. Future Ag Mgmt., 2020 U.S. Dist. LEXIS 195663 (N.D. Cal. Oct. 20, 2020) 19

Hanlon v. Chrysler Corp.
  (9th Cir. 1998) 150 F. 3d 1011 ............................................................. 5

Harris v. Marhoefer, 24 F.3d 16 (9th Cir. 1994) ........................................ 22

Ikonin v. Hartz Mountain Corp.
  (S.D. Cal. 1998) 122 F.R.D. 258 ............................................................. 7

In re Michael Milken & Assocs. Sec. Litig.
  (S.D. N.Y. 1993) 150 F.R.D. 57 ........................................................... 26

In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 330 F.R.D. 11 (E.D.N.Y. 2019).. 4

In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................... 6

Jordan v. Los Angeles County
  (9th Cir.) 669 F.2d 1311 ................................................................. 7

Kempen v. Matheson Tri-Gas, Inc., 2016 U.S. Dist. LEXIS 100537 (N.D. Cal., Aug. 1, 2016) . 8

Lerwill v. Inflight Motion Pictures Inc.
    (9th Cir. 1987) 582 F.2d 507..........................................................................13

Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.
    (9th Cir. 2001) 244 F.3d 1152.................................................................. 11, 12

Mendoza v. United States
    (9th Cir. 1980) 623 F.2d 1338....................................................................25

Mullane v. Central Hanover Bank & Trust Co.
    (1950) 339 U.S. 306....................................................................................24

O'Connor v. Uber Techs., Inc., 2019 U.S. Dist. LEXIS 54608 (N.D. Cal. Mar. 29, 2019)5, 6, 17, 19

Officers for Justice v. Civil Service Commission of City and County of San Francisco
    (9th Cir. 1982) 688 F.2d 615......................................................................15

Ontiveros v. Zamora, 303 F.R.D. 356 (E.D. Cal. 2014) ..........................................22

Ortega v. AHO Enters., 2020 U.S. Dist. LEXIS 144017 (N.D. Cal. Aug. 10, 2020)................. 10

Quiruz v. Specialty Commodities, 2020 U.S. Dist. LEXIS 209498 (N.D. Cal. Nov. 9, 2020)..... 6

Ries v. Ariz. Beverages USA LLC, 287 F.R.D. 523 (N.D. Cal. 2012).........................................7

Romero v. Producers Daily Foods, Inc.
    (E.D. Cal. 2006) 255 F.R.D. 474 ..................................................................7

Staton v. Boeing Co.
    (9th Cir. 2003) 327 F.3d 938.............................................................. 5, 15, 16

Stoddart v. Express Servs., 2020 U.S. Dist. LEXIS 186315 (E.D. Cal. Oct. 6, 2020)................ 6

Tijero v. Aaron Bros., Inc., 301 F.R.D. 314 (N.D. Cal. 2013) ....................... 9, 10, 22

Valentino v. Carter-Wallace
    (9th Cir. 1996) 97 F.3d 1227......................................................................12

Van Bronkhorst v. Safeco Corp. (9th Cir. 1976) 529 F.2d 943 ...........................................4

Walsh v. CorePower Yoga LLC, 2017 U.S. Dist. LEXIS 163991 (N.D. Cal. Oct. 3, 2017) ...... 23

Wang v. Chinese Daily News
    (C.D. Cal. 2005) 231 F.R.D. 602 ..................................................................7

Wren v. RGIS Inventory Specialists
    (N.D. Cal. 2011) 2011 WL 1230826 ...........................................................22

Wright v. Linkus Enters., Inc., 259 F.R.D. 468 (E.D. Cal. 2009) ........................ 11, 14

Zinser v. Accufi Research Institute, Inc.
    (9th Cir. 2001) 253 F.3d 1188....................................................................11

## STATUTES

Fair Labor Standards Act ..............................................................................................1

# FEDERAL RULES

Federal Rules of Civil Procedure,
    Rule 23, ................................................................................................................ passim

Rule 23(a) ....................................................................................................................... 5, 7

Rule 23(a)(1) ...................................................................................................................... 7

Rule 23(a)(2) .................................................................................................................. 8, 9

Rule 23(a)(3) ................................................................................................................ 9, 10

Rule 23(a)(4) .................................................................................................................... 10

Rule 23(b)(3) ............................................................................................................. passim

Rule 23(b)(3)(A),(B) and (C) ........................................................................................... 13

Rule 23(c) ......................................................................................................................... 25

Rule 23(c)(2)(B) ........................................................................................................ 24, 25

Rule 23(c)(3) .................................................................................................................... 25

Rule 23(e) ..................................................................................................................... 2, 16

Rule 23(e)(1) ...................................................................................................................... 4

# OTHER AUTHORITIES

Manual for Complex Litigation
    § 1.46 ............................................................................................................................4

Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro Before Trial
    § 10:573 .........................................................................................................................5

**INTRODUCTION**

Plaintiffs are migrant and seasonal farmworkers employed by Defendant Mesa Packing, LLC ("Defendant") in the harvest of broccoli, broccolini, cauliflower and, at times, other leafy vegetables who performed non-exempt agricultural piece rate work ("Class Members") for Defendant from February 4, 2016 to October 23, 2020. Doc. 1 at ¶ 1; Ex. A (Consent Judgment and Stipulation for Class Action Settlement), at ¶ B(1).

Plaintiffs filed this Class Action to assert their rights to be paid for all hours of work, to obtain Defendant's compliance with the terms of their working arrangement, payments for overtime under California law, reimbursement of necessary expenses like headlamps, payment of meal and rest break premium wages, and to receive lawful, accurate and complete paystubs. Doc. 1 at ¶¶ 2-3. Plaintiffs alleged they were compensated on a piece rate and hourly basis, but that the Defendant typically only recorded hours worked for those tasks which Defendant chose to compensate on an hourly basis. As a result of these claims, Plaintiffs, in a ten-count complaint, plead violations of the: (1) Migrant and Seasonal Agricultural Workers Protection Act ("AWPA"), 29 U.S.C. §§ 1801 *et seq.*; (2) California minimum wage laws, Cal. Lab. Code §§ 1182.11-1182.13, 1194 and 1197; (3) California overtime laws, Cal. Lab. Code § 1194 and Wage Order 14; (4) California meal period laws, Cal. Lab. Code §§ 226.7, 512 & Wage Orders; (5) California rest break laws, Cal. Lab. Code §§ 226.2, 226.7, 1198 & Wage Orders; (6) California reimbursement for business expenses law, Cal. Lab. Code § 2802; (7) California wage statement laws, Cal. Lab. Code §§ 226, 226.2 & Wage Orders; (8) California's Unfair Competition law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (9) California's Private Attorneys General Act, Cal. Lab. Code §§ 2698 *et seq.*; and (10) California reporting time pay law, Cal. Lab. Code § 1194 and Wage Order 14. Doc. 1 at 9-21.

Early in the litigation, the parties agreed to a sampling of class data and to participate in a private mediation and suspend further formal discovery. Ex. A at ¶ B(3); Ex. B (Morton Decl.) at ¶ 6; Doc. 19 at 5 (CMC statement noting this agreement). The

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL

parties informed the Court of their intentional to pursue private mediation at the Case Management Conference. *See* Doc. 19 at 6. On August 8, 2020, in Monterey, the parties mediated with Mediator Christopher E. Panetta. Ex. B at ¶ 6; Doc. 23 at 1. An issue raised by Defendant during the litigation was the presence of arbitration agreements. Ex. B at ¶ 7. The mediation was unsuccessful and the parties left without an agreement other than to continue settlement discussions. Ex. B at ¶ 6. As the parties resumed the litigation, the continued settlement discussions were ultimately successful. *Id*. Thereafter, the Parties worked cooperatively to draft and sign the long form Settlement. Ex. B at ¶ 6.

Plaintiffs now move under Rule 23(e) of the Federal Rules of Civil Procedure for preliminary approval of the Settlement and conditional class certification. For all the reasons set forth below, the Settlement is fair, reasonable and adequate. Class members should be provided notice of the Settlement and an opportunity to object or request exclusion from the settlement.

## **SUMMARY OF SETTLEMENT TERMS**

The full terms of the Settlement are set forth in the attached Exhibit A. The material terms of the Settlement are as follows:

- The Settlement Class is comprised of all persons that worked for Defendant as non-exempt piece rate workers during the period of February 4, 2016 to October 23, 2020 (the "Class Period"). Ex. A at ¶ A(3). The total number of Settlement Class Members is estimated to be seven hundred and one (701) employees. Ex. A at ¶ A(3); Ex. B (Morton Decl.) at ¶ 8(a).

- Defendant will pay the Gross Settlement Amount of $1,850,000 on a non-reversionary basis. Ex. A at ¶¶ C(1) and (7). Class members are not required to submit claims to receive settlement benefits. Ex. A at ¶ C(6). In addition and separate from the Gross Settlement Amount, Defendant will pay the employer's share of payroll taxes on the portion of settlement benefits allocated to wages and

will pay the cost of settlement administration apart from, and in addition to, the Gross Settlement Amount. Ex. A at ¶ C(1) and at ¶ A(9).

- After all required deductions are made from the Gross Settlement Amount, the Net Settlement Amount of approximately $1,420,000 will be distributed to Class Members. Ex. A. at ¶ C(6). Each Class Member who is not excluded from the Settlement will receive his/her pro rata share of the Net Settlement Amount based on the number of workweeks he/she performed work for Defendant during the Class Period, as a proportion of all such workweeks of the Settlement Class Members during Class Period. *Id*.

- An application by Plaintiffs for an award of attorney's fees of up to $400,000 (21.6% of the Gross Settlement Amount) and an award of litigation costs up to $7,500. Ex. A at ¶ C(4).

- The Plaintiffs will request an enhancement award of up to $7,500 each. Ex. A at ¶ C(5).

- The Settlement also provides for a release of Defendant's client Earthbound Farms for time periods during the class period when class members performed piece rate work for Earthbound Farms while compensated by Defendant. Ex. A at ¶ E(1).

- The Consent Judgment and Settlement also contains significant non-monetary terms include that Defendant will implement and enforce the following employment practices:
  - Provide a full 30-minute duty-free meal period before the conclusion of fifth and tenth hours of work on all work days;
  - Provide duty-free rest periods of no less than 10 minutes for every four hours, or major fraction thereof, of work. Defendant also agrees and is ordered to continue to provide a fifteen minute daily first rest period through the end of the year 2025;

- o all non-productive work, including but not limited to, pre-shift work preparing labels, performing exercises, changing harvesting locations (whether blocks, fields, or ranches), will be tracked separately and paid separately from the piece rate earnings at no less than the then applicable guaranteed hourly rate;

- o rest and recovery periods will be paid in accordance with Labor Code Section 226.2 (no non-productive time will be included in the denominator when calculating the average piece rate hourly rate); and

- o all other necessary tools and equipment will be provided to piece rate workers free of charge, including but not limited to, headlamps (with all necessary batteries). Ex. A at ¶ C(2).

## THE SETTLEMENT MERITS PRELIMINARY APPROVAL

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976); *Camilo v. Ozuna*, 2020 U.S. Dist. LEXIS 57435, *5 (N.D. Cal. April 1, 2020) ("a strong judicial policy favors settlement of Rule 23 class actions."). Rule 23(e)(1)(B) of the Federal Rules of Civil Procedures provides that "[t]he court must direct notice in a reasonable manner to all class members . . . if the court will likely be able to … approve the proposal … and certify the class[.]" Fed. R. Civ. P. 23(e)(1)(B); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (noting that after Rule 23 amendments "it appears that courts must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the factors weigh in favor of final settlement approval."); *O'Connor v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 54608, at *13 (N.D. Cal. Mar. 29, 2019) (describing the "review for preliminary approval" as "more robust."). The Rule 23(e)(2) factors are adequate representation, arm's length negotiation, adequate relief, and equitable treatment.  Fed. R. Civ. P. 23(e)(2).

In reviewing a class action settlement, a court undertakes two fundamental inquiries.  "First, the district court must assess whether a class exists." *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003).  In other words, the court must determine that the lawsuit qualifies as a class action under Rule 23 to begin with. *See, e.g. Hanlon v. Chrysler Corp.* 150 F. 3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).  Second, the court must determine whether the settlement is "fair, adequate, and reasonable." *Staton,* 327 F.3d at 952; Fed. R. Civ. P. 23(e)(2).  When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Acosta v. Trans Union LLC* 243 F.R.D. 377, 383 (C.D. Cal. 2007). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, 2014 U.S. Dist. LEXIS 89002, at *13 (N.D. Cal. June 27, 2014) (quotation omitted).

## A.   Plaintiffs' Claims Merit Class Action Treatment

Plaintiffs must show that approval is "likely" under the requirements of Rule 23 for preliminary certification.  Fed. R. Civ. P. 23(e)(1)(B).  Preliminary approval is appropriately granted "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotations omitted). Preliminary approval should not subsume the final approval analysis. *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003) (cautioning that without limits "the preliminary class certification issue can subsume the substantive review of the class action settlement.")

The Ninth Circuit has approved considering eight factors. *In re Bluetooth Headset*

5

*Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  But after the 2018 amendments to the Federal Rules which highlighted four factors in Rule 23(e)(2) many courts now primarily evaluate those factors.  Fed. R. Civ. P. 23(e)(2) (listing adequate representation, arm's length, adequate relief, and equitable treatment); *see. e.g., Quiruz v. Specialty Commodities*, 2020 U.S. Dist. LEXIS 209498, at *16 (N.D. Cal. Nov. 9, 2020); *O'Connor v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 54608, at *20 (N.D. Cal. Mar. 29, 2019) (applying the 23(e)(2) factors as "preliminary approval factors"); *Stoddart v. Express Servs.*, 2020 U.S. Dist. LEXIS 186315, at *11-12 (E.D. Cal. Oct. 6, 2020) (noting new factors do not displace others but were intended to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.") (quoting the Advisory Committee Notes).

Under these governing standards, this action meets the requirements for class certification under Rule 23(a) and Rule 23(b)(3) and final approval is likely applying the factors specified in Rule 23(e)(2).

### 1.   <u>Numerosity</u>

Under Rule 23(a)(1), a class may be maintained where the "class is so numerous that joinder of all members is impracticable."  In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits."  *Wang v. Chinese Daily News* 231 F.R.D. 602, 606 (C.D. Cal. 2005).

Here, there are at least 701 persons in the Settlement Class. This large number easily satisfies the numerosity requirement of Rule 23(a). *See Jordan v. Los Angeles County,* 669 F.2d 1311, 1319 (9th Cir.), *vac. on other grounds*, 459 U.S. 810 (1982) (classes of 39, 64 and 71 persons satisfied numerosity requirement and trial court erred in denying class certification for lack of numerosity); *see also*, *Ikonin v. Hartz Mountain Corp.* 122 F.R.D. 258, 262 (S.D. Cal. 1998) ("As a general rule . . . classes of 40 or more are numerous enough"); *Romero v. Producers Daily Foods, Inc.* 255 F.R.D. 474,

6

485 (E.D. Cal. 2006) ("A class with over forty members is presumed to satisfy the numerosity prerequisite."); *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not."); *Kempen v. Matheson Tri-Gas, Inc.*, 2016 U.S. Dist. LEXIS 100537, at *14 (N.D. Cal., Aug. 1, 2016) ("[a]s a general rule, classes of forty or more are considered sufficiently numerous.") (internal quotations omitted).

## 2.   **Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement must be "construed permissively." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). In general, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Plaintiffs need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie v. Barrack,* 524 F.2d 905 (9th Cir. 1975). Commonality exists where a "complaint contains a 'common contention' that easily 'is capable of classwide resolution': it is one type of injury allegedly inflicted by one actor in violation of one legal norm against a relatively small number of class members who all generally performed the same work." *Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1154 (9th Cir. 2016). Commonality is met where "resolution of the class claims depends on common questions of law and fact about the class members' employment with defendants." *Camilo v. Ozuna*, 2019 U.S. Dist. LEXIS 83794, at *19 (N.D. Cal. May 16, 2019).

Here, the fundamental questions common to all members of the Settlement Class that are determinative of Defendant's liability are: (1) did Defendant violate AWPA and

7

the parties working arrangement; (2) did Defendant fail to pay class members all California minimum wages; (3) did Defendant systematically fail to pay all California overtime wages; (4) did Defendant systematically fail to provide meal periods; (5) did Defendant systematically fail to provide rest breaks; (6) did Defendant fail to reimburse class members for all job-related expenses; (7) did Defendant systematically fail to provide accurate itemized wage statements; (8) did Defendant systematically fail to pay all wages earned at the time it stopped employing the Class Members; (9) did Defendant fail to pay class members for reporting and waiting time; (10) did Defendant violate California's Unfair Competition Law; and (11) did Defendant violate PAGA?  Since the answer to these questions will be the same for each class member, the common issues in this case satisfy the requirements of Rule 23(a)(2). *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 321 (N.D. Cal. 2013) (finding commonality requirement satisfied where plaintiffs contended that all non-exempt employees were subject to the same wage and hour policies and practices).

### 3.    **Typicality**

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class."  Representative claims are typical "[i]f they are reasonably co-extensive with those of absent class members; they need not be identical."  *Hanlon,* 150 F.3d at 120. "[T]he test is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotations and citations omitted). In other words, named plaintiff need not be "identically situated" with all other class members.  Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose."  *Hanon*, 976 F.2d at 508.  "It is enough if [his/her] situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief. *Cal Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d 1171, 1175 (9th Cir.

8

1990). In employment suits, "unpaid overtime claims are typical of the claims of the class[.]" *Ortega v. AHO Enters*., 2020 U.S. Dist. LEXIS 144017, at *14 (N.D. Cal. Aug. 10, 2020); *see also O'Connor v. Uber Techs., Inc*., 2019 U.S. Dist. LEXIS 54608, at *17 (N.D. Cal. Mar. 29, 2019) (finding typicality where the "Named Plaintiffs and their fellow class members the same legal injury").

Here, Plaintiffs are members of the Settlement Class and Plaintiffs allege the same injuries allegedly suffered by other class members. This lawsuit is clearly based on conduct that is not unique to Plaintiffs but was a practice common to all class members. Plaintiffs' claims easily satisfy the typicality requirement of Rule 23(a)(3). *See, e.g., Tijero v. Aaron Bros.,* 301 F.R.D. at 322 (finding typicality met where class was "not properly compensated due to the same unlawful policies and practices").

### 4.    Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Similarly, Rule 23(e)(2) highlights the importance of adequate representation in assessing final approval. Fed. R. Civ. P. 23(e)(2). Adequate representation turns on whether the named plaintiffs and their counsel "have any conflicts of interest with other class members," and whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Hanlon,* 150 F.3d at 1020.

Here, there are no conflicts of interest between Plaintiffs and absent Class Members. Moreover, Plaintiffs and the Class Members held the same positions and were employed subject to the same employment terms. *Tijero*, 301 F.R.D. at 322 (noting "the nature of the job positions [plaintiffs] held" in assessing typicality).

Similarly, there no conflicts of interests between Plaintiffs' counsel, the Plaintiffs or the Class Members. Defendant cannot dispute that Plaintiffs' counsel, who have substantial class action experience, can adequately represent the class. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*  244 F.3d 1152,

1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

### 5.    <u>Predominance of Common Questions</u>

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund,* 244 F.3d at 1162. Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy. *Zinser v. Accufix Research Institute, Inc.* 253 F.3d 1188, 1189 (9th Cir. 2001). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon,* 150 F.3d at 1022. In an employment suit, predominance is normally apparent because "the employer-defendant's actions necessarily caused the class members' injury." *Vaquero*, 824 F.3d at 1155.

Predominance is satisfied where Plaintiffs have alleged a common policy or plan to which all class members were subject. *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding predominance satisfied where "alleged policies [] required class members to work without compensation, meal and rest periods, and/or reimbursement for expenses"). Here, Plaintiffs alleged a host of policies involving reimbursement, timekeeping, and separate checks for Sunday work, which all led to unlawful wage payments. *Camilo*, 2019 U.S. Dist. LEXIS 83794, at *23 (finding predominance where "issues in dispute concern defendants' allegedly unlawful wage and hour policies, which generally apply to all class members."); *see also De Leon v. Ricoh USA, Inc.*, 2019 U.S. Dist. LEXIS 204442, at *21 (N.D. Cal. Nov. 25, 2019) (finding predominance where the issues were the "lawfulness of Ricoh's policies and practices regarding compensation, meal and rest breaks, expense reimbursement, accrual and payment of sick leave, wage statements, and maintenance of records, among others"). Since Defendant's liability turns on the resolution of these common questions, the answers to which will be the same for all class members, the Settlement Class is

"sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund,* 244 F.3d at 1162.

### 6.   <u>Superiority</u>

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied. *Cultinary/Bartenders Trust*, 244 F.3d at 1163; *see also Valentino v. Carter-Wallace,* 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

Here, since Defendant allegedly violated the law with respect to no less than 701 employees, there are clearly no economical alternatives to a class action. The only way for Class Members to vindicate all their rights in this case would be through individual lawsuits. But, in light of the large size of the Settlement Class that would clearly be an inefficient method. *See Lerwill v. Inflight Motion Pictures Inc.* 582 F.2d 507, 512 (9th Cir. 1987) (in certifying a class of employees seeking overtime wages, the court held that "[n]umerous individual actions would be expensive and time consuming"). Resolving numerous " individual cases in a single class action is a more efficient use of the Court's and parties' resources and the most economical way to resolve common questions about defendants' alleged wage and hour practices with respect to overtime pay and rest and meal breaks." *Camilo*, 2019 U.S. Dist. LEXIS 83794, at *24-25. Additionally, "class actions are preferred in wage-and-hour actions when individual employees may forgo pursuing their claims due to fear of retaliation." *De Leon*, 2019 U.S. Dist. LEXIS 204442, at *23.

Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense in separate actions; (B) the extent and nature of

any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).[1] Here, the factors set forth in Rule 23(b)(3)(A),(B) and (C) all favor class certification.

First, Class Members have no particular interest in individually controlling the prosecution of separate actions. *Camilo*, 2019 U.S. Dist. LEXIS 83794, at *24 (finding in case with average settlement amount of $1,699 per class member that "the record presented indicates that the damages at issue likely are not great enough for individual putative class members to want to litigate separate actions against the defendants.") Any class member who wants to pursue a claim for an amount greater than a settlement share can opt out of the Settlement.

Second, there is no competing litigation regarding the statutory violations at issue.

Finally, it is desirable to concentrate the issues in this forum because the parties performed the work in the Salinas Valley of California.  And it is unclear any other forum could hear this dispute.  Moreover, the parties have reached a Settlement. "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious.  *Elkins v. Equitable Life Ins. Of Iowa* 1998 WL 133747, at *19 (M.D. Fla. 1998); *Wright v. Linkus Enters.*, 259 F.R.D. at 474  (following *Elkins* and noting "[f]or purposes of preliminary approval of the Settlement Agreement, there appears to be no reason why concentrating the litigation in this Court would be undesirable."). The conclusion is inescapable that a class action provides the most efficient mechanism for resolving all the claims of the class members in this case.

---

[1] In deciding whether to certify a class for settlement purposes the fourth factor does not apply. *Amchem Products Inc. v. Woodward* 521 U.S. 591, 620 (1997) (holding a district court "need not inquire whether the case, if tried, would present intractable management problems.")

1

2

### B.   <u>The Settlement is Fair, Reasonable and Adequate</u>

3

The "fair, reasonable and adequate" finding can be made after considering

4

adequacy, arm's length, whether the relief is adequate, and whether class members are

5

treated equitably.  Fed. R. Civ. P. 23(e)(2). The Ninth Circuit has directed district courts

6

to consider a variety of factors without providing an "exhaustive list" or suggesting

7

which factors are most important. *See Staton*, 327 F.3d at 959. "The relative degree of

8

importance to be attached to any particular factor will depend upon and be dictated by

9

the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and

10

circumstances presented by each individual case." *Officers for Justice v. Civil Service*

11

*Commission of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982).

12

Plaintiffs also provide information suggested by the Northern District's "Procedural

13

Guidance of Class Action Settlements." Procedural Guidance for Class Action

14

Settlement (N.D. Ca. Dec. 5, 2018) (available at

15

https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-

16

settlements/).

17

Due to the impossibility of predicting any litigation result with certainty, a district

18

court's evaluation of a settlement essentially amounts to "nothing more than 'an

19

amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for*

20

*Justice*, 688 F.2d at 625 (citation omitted). Here, "the fact that the parties reached a

21

settlement after the parties conducted an investigation, exchanged discovery of the facts

22

of this case, and participated in a full day of mediation weighs in favor of granting

23

preliminary settlement approval." *Camilo*, 2019 U.S. Dist. LEXIS 83794, at *31; *Thio v.*

24

*Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014) (finding settlement reached at

25

mediation after exchange of information "appears to be the product of serious,

26

informed, non-collusive negotiations."). The ultimate touchstone, however, is whether

27

"class counsel adequately pursued the interests of the class as a whole." *Staton,* 327 F.3d

28

at 961. With pre-certification settlements an "exacting review is warranted" to ensure

there are no "subtle signs of collusion[.]" *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that objective.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit has also specified that courts should pay attention to any "questionable aspects of the settlement" such as a "clear sailing agreement, [] disproportionate cash distribution to attorneys' fees justified in part by potentially inflated non-monetary relief, [] large incentive awards . . . [or] reversionary clauses[.]"*SFBSC Mgmt., LLC*, 944 F.3d at 1060.

Here, the Parties reached a non-collusive settlement, which does not contain any questionable aspects, and did so after data was produced and a mediation was held. As discussed below, the Settlement is adequate and falls well within the range of reasonable outcomes and the proposal treats class members equitably. And, as discussed above, the class counsel and class representatives have adequately represented the class.

### 1.   Gross Settlement Amount and Non-Monetary Relief

The parties reached a Settlement in good faith after negotiating at arms-length during a private mediation that was held after Plaintiffs' counsel engaged in pre-litigation investigation and analysis of payroll data for the class to determine the value of the class claims. While the Ninth Circuit requires courts "employ[] extra caution and more rigorous scrutiny—when it comes to settlements negotiated prior to class certification" that scrutiny applied here will show the results obtained are adequate, appropriate and fair. *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

The settlement Plaintiffs achieved provides a recovery in excess of $2,000 on average per class member. Ex. B at ¶ 11. Pursuant to the Settlement, Defendant will pay $1,850,000, plus its shares of payroll taxes and the cost to administer the settlement. Ex. A at ¶ C(1); Ex. B at ¶ 8. The $1,850,000.00 amount represents approximately 46% of

14

Defendant's maximum liability. Morton Decl. at ¶ 10-11. The 46% amount is within the range that district courts in California have found fair and reasonable. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding settlement fair and adequate where "the agreed upon common fund represents between 27 percent and 11 percent of the total potential recovery."); *Chen v. Chase Bank USA, N.A.*, 2020 U.S. Dist. LEXIS 110755, at *18 (N.D. Cal. June 23, 2020) (approving settlement with was "36% of Settlement Class Members' potential recovery."); *O'Connor v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 54608, at *35 (N.D. Cal. Mar. 29, 2019) (approving settlement that was "37% of the $54 million verdict value of Plaintiffs' claims."); *Cortez v. Vieira Custom Chopping, Inc.*, 2019 U.S. Dist. LEXIS 162454, at *22-23 (E.D. Cal. Sep. 20, 2019) (finding "settlement amount is similar to percentage recoveries California district courts have found to be reasonable" where recovery was "67 percent recovery of the plaintiffs' primary claims" and "the recovery rate is approximately 31 percent [with the penalties]").[2]  The settlement represents an average recovery for each of the 701 Class Members of $2,639.09 gross recovery ($1,850,000/701) or a $2,025.68 average net recovery ($1,420,000/701). Ex. B at ¶ 11. Plaintiffs and their counsel reasonably concluded these amounts were in the best interest of class members, particularly where issues of arbitration agreements signed by class members remained to be litigated if the case did not settle.

---

[2] In Plaintiffs' counsels experience, settlements of wage claims in agricultural disputes typically range between 20% and 60% of full lost wage damage amounts excluding full penalty calculations. For example, the settlement in litigation for farmworkers *Lopez-Gutierrez v. Foothill Packing* in which Plaintiffs' counsel was involved in a prior position, resulted in a recovery of 18% of the back wages, and 8 of total damages, along with 85% of back wages for the named Plaintiffs, in a total settlement fund of $2.2 Million which covered 3900 seasonal laborer positions with an average payment of a little above $300 per season.  The $2.2 million settlement included approximately $65,000 in administration costs and $300,000 in fees. Here, the costs to administer the settlement will be paid by Defendant in addition to the $1,850,000 amount.

In addition to the Gross Settlement Amount the Settlement and Consent Judgment obtains significant nonmonetary benefits for the Named Plaintiffs and class members currently employed by Defendant and individuals who may be employed by Defendant in future seasons governed by this settlement.  Ex. B at ¶ 8(f). Where a settlement prescribes nonmonetary relief that expands or exceeds what is required by existing law, the value is significant. *See Bedolla v. Allen*, 736 F. App'x 614, 617-18 (9th Cir. 2018) (finding "training employees on California labor law and auditing branch offices for compliance constitutes more than simply 'abiding by the law.'"); *see also Farrell v. Bank of Am. Corp., N.A.*, 2020 U.S. App. LEXIS 27980, at *4 (9th Cir. Sep. 2, 2020) (affirming final approval and finding value in nonmonetary term that kept defendant "from assessing the fees challenged in this lawsuit[.]").

Here, Defendant agrees to follow existing law but additional requirements are also detailed.  Defendant, pursuant to the agreement, shall be ordered to implement and enforce the following employment practices: (a) Provide a full 30-minute duty-free meal period before the conclusion of fifth and tenth hours of work on all work days of more than 5 or ten hour total duration; (b) Provide duty-free rest periods of no less than 10 minutes for every four hours, or major fraction thereof, of work. Defendant also agrees and is ordered to continue to provide the first daily rest period with a 15 minute duration through the end of the year 2025; (c) all non-productive work, including but not limited to, pre-shift work preparing labels, performing exercises, changing harvesting locations (whether blocks, fields, or ranches), will be tracked separately and paid separately from the piece rate earnings at no less than the guaranteed hourly rate; (d) rest and recovery periods will be paid in accordance with Labor Code Section 226.2 (no non-productive time will be included in the denominator when calculating the average piece rate hourly rate); and (e) all other necessary tools and equipment will be provided to piece rate workers free of charge, including but not limited to, headlamps (with all necessary batteries). Ex. A at ¶ C(2).

The settlement treats class members equitably as it will distribute funds to class members based on the workweeks in which they performed work. Such a "proportional distribution treats Class Members equitably." *O'Connor*, 2019 U.S. Dist. LEXIS 54608, at *43. And, the settlement seeks recovery for all class members even though Defendant contended that roughly half the class, including two of the three Named Plaintiffs, were subject to arbitration provisions. Ex. B at ¶ 7.

The proposed method of distributing funds to the class members without any claims process is also adequate and likely to be effective. Plaintiffs' counsel and the Claims Administrator have experience paying migrant workers in such a manner. *See, e.g.*, *Gomez-Gasca v. Future Ag Mgmt.*, 2020 U.S. Dist. LEXIS 195663, at *9 (N.D. Cal. Oct. 20, 2020) (describing notice process with class of foreign worker); Ex. B at ¶ 3. Plaintiffs' counsel believes payment will be able to be made to the majority of the class members in part through word-of-mouth and in part through the notice process and the proposed website. Ex. B at ¶ 13.

Although Defendant does not oppose class certification for settlement purposes, Defendant would have opposed a motion for class certification otherwise. The Settlement here, resolves claims alleged in the Complaint. Plaintiffs sought to represent "All workers employed by Defendant at work sites in California and compensated, in part, on a piece rate basis or employed during early morning or late evening low-light conditions." Doc. 1 at ¶ 51. Defendant also had various defenses, including a "good faith" defense to Plaintiffs' claims for penalties and a defense that workers who had signed arbitration agreements which contained a class action waiver could not participate as members of the class. Thus, in the absence of settlement, there were possible litigation outcomes where class members would have recovered absolutely nothing. In light of the risks and uncertainty of continued litigation, Plaintiffs achieved a fair settlement well within the range of reasonable outcomes that merits approval.

### 2.   Attorney's Fees and Costs

The compensation sought for Plaintiffs' counsel is also fair and reasonable.  When Plaintiffs file a motion for final approval, Plaintiffs will apply for an award of fees in the amount of $400,000 (21.6% of the Gross Settlement Amount) and costs of no more than $7,500.  Ex. A at ¶ C(4).

A 25 percent award is the "benchmark" amount of attorneys' fees, district courts may adjust this figure upwards or downwards. *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990). "[F]ederal courts have consistently approved of attorney fee awards over the 25% benchmark, specifically at a rate of 30% or higher[.]" *Bellinghausen*, 306 F.R.D. at 260 (internal quotations omitted); *Ching v. Siemens Indus*., 2014 U.S. Dist. LEXIS 89002, at *25 (N.D. Cal. June 27, 2014) ("the request for attorneys' fees in the amount of 30% of the common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases.").

In contingent litigation, "where, as here, class counsel has significant experience in the particular type of litigation at issue; . . .  courts have sometimes awarded even more than the 25 percent benchmark percentage of the common fund." *Bellinghausen*, 306 F.R.D. at 261; *see also Black v. T-Mobile USA, Inc*., 2019 U.S. Dist. LEXIS 123676, at *19 (N.D. Cal. July 24, 2019) (awarding "attorneys' fees of 30% of the total settlement amount"); *Bower v. Cycle Gear, Inc*., 2016 U.S. Dist. LEXIS 112455, at *17 (N.D. Cal. Aug. 23, 2016) (awarding fees of 30% of the settlement amount in part because "results obtained for the Class Members were very favorable.") Here, the common fund is the Gross Settlement Amount of $1,850,000. Plaintiffs' proposed fee is less than the benchmark.  The Settlement also provides for non-monetary relief that provides value to class members in addition to the Gross Settlement Amount. But, fee requests need not be determined at the preliminary approval stage because "the fee request is an issue that can be determined at the Final Fairness Hearing." *Tijero*, 301 F.R.D. at 325.

Plaintiffs also request reimbursement of counsel's costs in an amount up to $7,500. Ex. A at ¶ C(4).  Class Counsel is entitled to reimbursement of "out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (internal citation omitted). Plaintiffs' counsel will submit a declaration documenting their costs in their motion for final settlement approval.

### 3. <u>Incentive Payment</u>

Incentive payments serve to reward named plaintiffs for the time and effort expended on behalf of the class, and for exposing themselves to the significant risks of litigation. "It is well established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service payments." *Wren v. RGIS Inventory Specialists* 2011 WL 1230826, at *31 (N.D. Cal. 2011).  As the Ninth Circuit has observed, incentive payments to named plaintiffs are now "fairly typical." *Rodriguez v. West Publishing Corp.* 563 F.3d 948, 958 (9th Cir. 2009).

Here, Plaintiffs seek incentive awards that may not exceed $7500 each. Ex. A at ¶ C(5). This amount is justified based on the size of the Gross Settlement Amount, the average amount of settlement benefits per class member, the risk and burden of litigation, and the amount of time devoted by Plaintiffs to this case, including participating in the mediation which led to a settlement. Ex. B at ¶ 14. When Plaintiffs move for final approval, they will submit declarations attesting to the amount of time they have devoted to this case and explaining why they believe they are entitled to an enhancement. The amount of incentive payment sought by Plaintiffs in this case is comparable to the amount of incentive payments awarded to named plaintiffs in other class action cases with Gross Settlement Amounts and average recovery per class member of similar magnitude. Morton Decl. ¶14; *see also Walsh v. CorePower Yoga LLC*, 2017 U.S. Dist. LEXIS 163991, at *40 (N.D. Cal. Oct. 3, 2017) (approving "a

$10,000 service award for Plaintiff" in employment litigation); *Black*, 2019 U.S. Dist. LEXIS 123676, at *21  ("find[ing] that a $10,000 service award is reasonable to compensate Plaintiff."); *McDonald*, 2019 U.S. Dist. LEXIS 80501, at *24  (same); *Gomez-Gasca v. Future Ag Mgmt.*, 2020 U.S. Dist. LEXIS 195663, at *18 (N.D. Cal. Oct. 20, 2020) (approving $10,000 incentive payment to farmworker plaintiff based on "size of the Gross Settlement Amount, the average amount of settlement benefits per class member, the risk and burden of litigation, and the amount of time devoted by Plaintiff to th[e] case"). Especially in light of the results achieved by Plaintiffs, the risks they assumed and results they obtained for all Class Members merit the service awards.

### 4. Cy Pres Award

The settlement is non-revisionary and provides that any settlement amount not paid to class members will be a *cy pres* award split evenly between the Food Bank for Monterey County and the not for profit heath care provider Salud Para La Gente located in Watsonville, California.  Ex. A at ¶ C(6). Plaintiffs' counsel has no relationship with either nonprofit entity.  The Food Bank provides subsistence assistance to low income families in the Monterey County region.  Salud Para La Gente provides healthcare services to low-wage individuals in the greater Monterey County area.  Both entities operate in the region where Plaintiffs and the class members live and/or work.

### 5. The Class Notice

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). Rule 23(e) "requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1044 (9th Cir. 2019) (internal citations omitted). And, notice must be "'reasonably calculated'

to apprise all class members of the settlement[.]"*SFBSC Mgmt., LLC*, 944 F.3d at 1047. But, "parties are not required to implement all potential options in every case[.]" *Camilo v. Ozuna*, 2020 U.S. Dist. LEXIS 57435, *10 (N.D. Cal. April 1, 2020).

Here, the Parties have agreed to send notice to Class Members by first class mail in English and Spanish and create a settlement website. Ex. A at ¶ D(2). The Settlement Administrator shall also prepare and maintain a website through the administration of the settlement where the Notice and any other case information shall be available to Class Members in English and Spanish. *Id*. This will be available at www.mesalitigio.com. The Settlement Administrator will provide Class Counsel a copy of the Class List for Class Counsel to use to answer any class member's questions and to assist the Settlement Administrator in the administration of the Settlement. *Id*. Reasonable standard skip tracing devices will be used as necessary to verify the accuracy of all addresses before the initial mailing date to ensure that the Notice is sent to all Class Members at the addresses most likely to result in immediate receipt of those documents. *Id*. at ¶ D(3). With respect to any returned Notices, the Settlement Administrator shall use reasonable diligence to obtain a current address and re-mail to such address. *Id*. This clearly satisfies the requirements of Rule 23(c) and due process. *See, e.g., Camilo*, 2020 U.S. Dist. LEXIS 57435, at *11 (approving mailed notice with skip tracing, and website).

Rule 23(c)(2)(B) also sets forth requirement regarding the content of the notice. The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action;

- the definition of the class certified;

- the class claims, issues, or defenses;

- the right of the class member to enter an appearance through counsel if the member so desires;

- the fact that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL

- the binding effect of a class judgment on class members under Rule 23(c)(3).

The proposed Notice attached as Exhibit A to the Settlement complies fully with Rule 23(c)(2)(B). The Notice directs that objections be sent to the Settlement Administrator's office. Ex. A at ¶ D(4).  Any objections received by the Administrator will also be documented and reported. *See id.* Courts routinely approve class notices even when they provide only general information about a settlement.  *See Mendoza v. United States* 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" sufficient); *In re Michael Milken & Assocs. Sec. Litig.* 150 F.R.D. 57, 60 (S.D. N.Y. 1993) (notice "need only describe the terms of the settlement generally.") The class notice in this case provides more than adequate notice about the Settlement.

The Parties have selected Atticus Administration, LLC to send the Notice.  The Parties sought a settlement administrator who had experience working with Mexican laborers, and who was willing to undertake the engagement.  Plaintiffs' counsel regularly uses Atticus Administration and has used them in approximately 17 engagements in the past two years involving either class notices, settlements or other Court-authorized notice distribution. Total settlement administration cost is estimated to not exceed $10,000, and is to be paid directly by Defendant apart from the gross settlement amount.

## THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING

The last step in the settlement approval process is the fairness hearing, where the court makes a final determination about the propriety of settlement.  In accordance with the timetables set forth in the Settlement for giving notice to class members and submitting requests for exclusion, Plaintiffs request that the fairness hearing in this case be schedule on a date approximately 130 days after preliminary approval (around June, 2021).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CONCLUSION</u>

Plaintiffs obtained a Settlement that provides 701 class members exceptionally good value on their claims that Defendant, in the absence of a settlement, would have vigorously disputed could proceed as a class action. Since the Settlement is fair, reasonable and adequate in all respects, the Court should grant Plaintiffs' motion for preliminary approval of the Settlement in its entirety and adopt the proposed order submitted herewith.

Dated: January 22, 2021                LAW OFFICES OF SANTOS GOMEZ

By      s/ D. Morton
Dawson Morton
Santos Gomez
Attorneys for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this _22nd__ day of January 2021 I have filed the foregoing  MOTION FOR PRELIMINARY APPROVAL using the Court's CM/ECF system.  The Court will electronically notice the following through the CM/ECF system:

Ana Toledo
NOLAND, HAMERLY, ETIENNE & HOSS
A Professional Corporation
333 Salinas Street
P.O. Box 2510
Salinas, CA 93902
atoledo@nheh.com
canossett@nheh.com

Counsel for Mesa Packing, Inc.

s/ D. Morton
Dawson Morton

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL