United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

WILLIAM MIGUEL-SANCHEZ, ET AL.,

Plaintiffs,

v.

MESA PACKING, LLC,

Defendant.

Case No.  20-cv-00823-VKD

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**

Re: Dkt. No. 26

Plaintiffs William Miguel-Sanchez, Luis Antonio Meza-Estrada, and Sergio Jimenez-Cruz filed this action for themselves and on behalf of a putative class against defendant Mesa Packing, LLC ("Mesa") for alleged violations of the California Labor Code; the Migrant and Seasonal Agricultural Workers Protection Act ("AWPA"), 29 U.S.C. §§ 1801 et seq.; and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.  The parties have agreed to a settlement, and plaintiffs now move for preliminary approval of that settlement.  Dkt. No. 26.  Mesa does not oppose the motion.  Dkt. No. 30.

The Court heard oral argument on plaintiffs' motion on March 9, 2021.  Dkt. No. 33.  At the Court's direction (Dkt. No. 34), plaintiffs submitted supplemental briefing on certain issues.[1] Dkt. No. 35.  Upon consideration of the moving papers, plaintiffs' supplemental brief, and the arguments made at the hearing, the Court grants the motion for preliminary approval of the class action settlement.[2]

---

[1] Plaintiffs did not submit a revised version of their settlement agreement that reflects the revisions to the third-party releases they represent the parties have agreed to.  *See* Dkt. No. 35 at 2.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally

United States District Court
Northern District of California

I.      **BACKGROUND**

A.      **Plaintiffs' Allegations**

According to the complaint, Mesa is a farm labor contractor that employs migrant and seasonal agricultural field workers.  Dkt. No. 1 ¶¶ 1, 7-11, 17; Dkt. No. 35-1 ¶ 2; Dkt. No. 35-2 ¶ 2.  Mr. Miguel-Sanchez has worked for Mesa since February 2009, and Messrs. Meza-Estrada and Jimenez-Cruz have worked for Mesa since September 2014.  Dkt. No. 1 ¶¶ 7-9.  Plaintiffs were to be compensated for their work on a piece rate and hourly basis.  *Id.* ¶¶ 3, 18, 30.

Plaintiffs allege violations of the California Labor Code and the AWPA.  First, plaintiffs say that they and other putative class members were not paid for time spent on "pre-shift exercises" and distribution of items and tools needed for their work, and that Mesa did not accurately record their field arrival times and work that occurred prior to scheduled shift start times.  *Id.* ¶¶ 21-24.  Second, because plaintiffs and other putative class members began work before dawn, they required headlamps.  Plaintiffs say they purchased, maintained, charged, and replaced their own headlamps and batteries without any reimbursement or compensation for those items, and were not paid for the time spent preparing and maintaining them.  *Id.* ¶¶ 25-29.  Third, plaintiffs allege that Mesa did not accurately record time spent performing piece rate work, resulting in an under-recording of hours worked.  *Id.* ¶¶ 30-33.  Fourth, plaintiffs allege that Mesa did not provide accurate paystubs.  *Id.* ¶¶ 34-35.  Fifth, plaintiffs allege that they and other putative class members were suffered and permitted to work during their 30-minute unpaid meal periods, but that Mesa automatically deducted the full-30 minute period from workers' daily total hours worked and therefore did not pay them for that time worked.  *Id.* ¶¶ 35-39.  Additionally, plaintiffs say that they regularly worked without at least one required off-duty 30-minute meal period or uninterrupted 10-minute rest break, and they were not compensated for any late, short, or missed meal periods or breaks.  *Id.* ¶¶ 41-46.  Finally, plaintiffs allege that they were required to report to work but were on occasion sent home before being provided at least half the usual day's work and subsequently not paid reporting time wages.  *Id.* ¶¶ 39-40.

---

adjudicated by a magistrate judge.  Dkt. Nos. 11, 13; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  The consent of absent class members is not required for this Court to exercise jurisdiction over this matter.  *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017).

United States District Court
Northern District of California

1    Plaintiffs commenced this action on February 4, 2020. Dkt. No. 1. They assert the

2    following claims: (1) violation of the AWPA, 29 U.S.C. §§ 1801 et seq.; (2) failure to pay

3    minimum wage compensation in violation of California Labor Code §§ 1182.11-1182.13, 1194,

4    and 1197; (3) failure to pay overtime wages in violation of California Labor Code § 1194 and

5    Wage Order 14; (4) failure to provide meal periods or premium wages in lieu thereof in violation

6    of California Labor Code §§ 226.7 and 512 and Wage Order 14; (5) failure to provide rest breaks

7    or premium wages in lieu thereof in violation of California Labor Code §§ 226.2, 226.7, and 1198

8    and Wage Order 14; (6) failure to indemnify for necessary business expenditures in violation of

9    California Labor Code § 2802; (7) failure to provide accurate itemized wage statements in

10   violation of California Labor Code §§ 226 and 226.2; (8) violation of California's UCL, California

11   Business and Professions Code §§ 17200 et seq.; (9) entitlement to civil penalties under

12   California's Private Attorneys General Act ("PAGA"), California Labor Code §§ 2698 et seq.; and

13   (10) failure to provide pay for reporting time in violation of California Labor Code § 1194 and

14   Wage Order 14. *Id.* ¶¶ 60-146. The complaint seeks relief on behalf of a class defined as "[a]ll

15   workers employed by Defendant at work sites in California and compensated, in part, on a piece

16   rate basis or employed during early morning or late evening low-light conditions." *Id.* ¶ 51; *see*

17   *also id.* ¶¶ 50-59.

18   Following some initial discovery, the parties negotiated a settlement of the asserted claims.

19   Dkt. No. 26 at 1–2.

20   **B.    Proposed Settlement**

21   For purposes of settlement, plaintiffs request that the Court certify a class under Rule 23 as

22   "the 701 persons that worked for [Mesa] as non-exempt piece rate workers during the period of

23   February 4, 2016 to October 23, 2020." Dkt. No. 26 at 2. Plaintiffs further request that Messrs.

24   Miguel-Sanchez, Meza-Estrada, and Jimenez-Cruz be appointed as class representatives and

25   Santos Gomez and Dawson Morton of the Law Offices of Santos Gomez be appointed as class

26   counsel. *See id.*

27   The settlement agreement requires Mesa to pay $1,850,000 ("the gross settlement

28   amount"), which includes: (1) payments for attorneys' fees and costs awarded to class counsel, not

3

to exceed $400,000 for fees and $7,500 for costs; (2) incentive payments to the named plaintiffs ($7,500 for each plaintiff), and (3) settlement benefits to class members.  Dkt. No. 26-1 at 5–7.  The gross settlement amount does not include payroll taxes owed on settlement benefits or the cost of settlement administration (estimated at $9,982), which Mesa will pay separately.  *Id.* at 2–3, 5.  The net settlement amount after accounting for attorneys' fees and costs and incentive payments is estimated to be $1,427,500.  *See id.* at 5–7.  Any unclaimed portion of the settlement funds will be distributed in equal amounts to the Food Bank for Monterey County, California and the non-profit health care provider Salud Para La Gente as cy pres recipients.  *Id.* at 7.

Additionally, the settlement agreement requires Mesa to implement and continue to maintain the following employment practices:

a) Provide a full 30-minute duty-free meal period before the conclusion of fifth and tenth hours of work on all work days of more than five hour or ten hour total duration;

b) Provide duty-free rest periods of no less than 10 minutes for every four hours, or major fraction thereof, of work, and to continue to provide the first daily rest period with a 15-minute duration through the end of the year 2025;

c) Track and record all non-productive work, including but not limited to, pre-shift work preparing labels, performing exercises, time changing harvesting locations during the work day (whether at the same field worksite or between different ranches), separately and paid separately from the piece rate earnings at no less than the guaranteed hourly rate;

d) Pay wages for rest and recovery periods in accordance with Labor Code Section 226.2 (no non-productive time will be included in the denominator when calculating the average piece rate hourly rate); and

e) Provide all other necessary tools and equipment to piece rate workers free of charge, including but not limited to, headlamps (with all necessary batteries).

*Id.* at 5–6.

The settlement agreement provides that all individuals in the proposed class who do not submit a timely and valid request to opt out shall be deemed to have released any claims under California law asserted in the complaint or that could have been asserted based on the complaint's allegations between February 4, 2016 and October 23, 2020 ("the class period"), including the following: (a) unpaid wages, Cal. Lab. Code §§ 1182.11-1182.13, 1194 and 1197; (b) unpaid

4

United States District Court
Northern District of California

overtime wages, Cal. Lab. Code § 1194 and Wage Order 14; (c) failure to provide meal periods, Cal. Lab. Code §§ 226.7, 512 & Wage Orders; (d) failure to provide rest breaks, Cal. Lab. Code §§ 226.2, 226.7, 1198 & Wage Orders; (e) failure to pay wages upon separation, Cal. Lab. Code §§ 201-203; (f) failure to provide accurate wage statements, Cal. Lab. Code §§ 226, 226.2 & Wage Orders; (g) failure to pay for reporting time, Cal. Lab. Code § 1194 and Wage Order 14; (h) failure to reimburse for business expenses, Cal. Lab. Code § 2802; (i) unlawful business practices related to the above alleged Labor Code violations pursuant to Cal. Bus. & Prof. Code §§ 17200 et seq.; (j) any and all claims under PAGA arising out of the wage, hour and payroll practices asserted, Cal. Lab. Code §§ 2698 et seq.; and (k) violations of AWPA, 29 U.S.C. §§ 1801 et seq. *Id.* at 10.  Originally, the release extended to claims against "third parties such as Earthbound Farm, LLC."  *Id.*  Plaintiffs' supplemental brief represents that the parties subsequently agreed to limit the release to include specifically the following third parties: Earthbound Farm, LLC, Growers Express, LLC, The Nunes Company, Inc., and Ocean Mist Foods, LLC.  Dkt. No. 35 at 2.

The settlement agreement calls for appointment of a settlement administrator (here, the parties have selected Atticus Administration) to prepare and mail the class notice, conduct any necessary address traces, track requests for exclusion, respond to class member inquiries, distribute settlement payments, and report taxes in connection with the settlement.  Dkt. No. 26-1 at 3, 8–9.  Within 15 calendar days after preliminary approval is granted, Mesa will provide to the settlement administrator the following information for each class member: complete name, last known address, Social Security Number, dates of employment, and number of piece rate workdays worked during the class period necessary to determine each individual's estimated settlement payment.  *Id.* at 8.  Within 10 days after receiving the information for the class, the settlement administrator will mail to all class members, via First Class United States Mail, a copy of the court-approved class notice in English and Spanish.  *Id.* at 8–9.  The settlement administrator will also prepare and maintain a website where the class notice and other case-related documents will be made available in English and Spanish.  *Id.* at 9.  The settlement administrator will use standard skip tracing procedures as necessary to obtain forwarding addresses prior to mailing the class

United States District Court
Northern District of California

1   notices.  *Id.*  If any notices are returned, the settlement administrator will use reasonable diligence

2   to obtain a current address and re-mail the notice to that address.  The mailed notices and website

3   shall be further supplemented by notice through the WhatsApp messaging application using class

4   members' known phone numbers.  *Id.*

5        The settlement agreement further provides that class members shall have 45 days from the

6   initial mailing of the notice to (a) request exclusion from the settlement or (b) object to the

7   settlement and advise of their desire to appear at the final fairness hearing.  Dkt. No. 26-1 at 9.

8   Any such requests or objections must be submitted in writing by mail, e-mail, or fax to the

9   settlement administrator.  *Id.*; *see also* Dkt. No. 26-4 at 2.  Any member who does not timely

10  request exclusion shall receive their pro rata share of the net settlement amount based on the

11  number of pay periods they performed work for Mesa during the class period and be bound by the

12  release of claims.  Dkt. No. 26-1 at 7, 10.

## II.    LEGAL STANDARD

14       Court approval is required for the settlement of Rule 23 class actions.  *See* Fed. R. Civ. P.

15  23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for

16  purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the

17  court's approval.").  The Ninth Circuit has declared that a strong judicial policy favors settlement

18  of Rule 23 class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

19  However, no broad presumption of fairness applies to such settlements.  *Roes v. SFBSC Mgmt.,*

20  *LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).  And where the parties reach a settlement before class

21  certification, courts must "employ[] extra caution and more rigorous scrutiny," *id.*, and "peruse the

22  proposed compromise to ratify both the propriety of the certification and the fairness of the

23  settlement," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  *See also In re Bluetooth*

24  *Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class

25  certification, there is an even greater potential for a breach of fiduciary duty owed the class during

26  settlement.  Accordingly, such agreements must withstand an even higher level of scrutiny for

27  evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)

28  before securing the court's approval as fair.").

United States District Court
Northern District of California

1   First the Court must assess whether a class exists.  *Staton*, 327 F.3d at 952.  Second, the

2   Court must assess whether the proposed settlement is "fundamentally fair, adequate, and

3   reasonable," considering "the settlement taken as a whole, rather than the individual component

4   parts, that must be examined."  *Id*. (internal quotations and citation omitted).

5   **III.   DISCUSSION**

6       **A.      Rule 23 Class Certification**

7       Plaintiffs bear the burden of establishing, by a preponderance of the evidence, that class

8   certification is appropriate under Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

9   (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with

10  the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties,

11  common questions of law or fact, etc.") (emphasis original).  Class certification under Rule 23

12  proceeds in two steps.  First, plaintiffs must satisfy the four prerequisites under Rule 23(a),

13  namely: numerosity, commonality, typicality, and adequacy of representation.  *Id*. at 349.

14  Additionally, plaintiffs must also show that at least one of the bases for certification under Rule

15  23(b) is met.  *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Here, plaintiffs seek

16  certification under Rule 23(b)(3) and therefore must show that "questions of law or fact common

17  to class members predominate over any questions affecting only individual members, and that a

18  class action is superior to other available methods for fairly and efficiently adjudicating the

19  controversy."  Fed. R. Civ. P. 23(b)(3).

20          **1.      Rule 23(a) certification**

21              **a.      Numerosity**

22      Under Rule 23(a), the class must be "so numerous that joinder of all members is

23  impracticable."  Fed. R. Civ. P. 23(a)(1).  While there is no fixed number for this requirement,

24  courts generally find that numerosity is satisfied for classes consisting of 40 or more members.  *In*

25  *re Facebook, Inc. PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012).  Here, the

26  numerosity requirement is met as there are 701 putative class members.

27              **b.      Commonality**

28      Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P.

1   23(a)(2).  A question is common where "it is capable of classwide resolution—which means that

2   determination of its truth or falsity will resolve an issue that is central to the validity of each one of

3   the claims in one stroke."  *Dukes*, 564 U.S. at 350.  However, "[w]hat matters to class certification

4   . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a

5   classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."

6   *Id.* (citation omitted).  "All questions of fact and law need not be common to satisfy the

7   commonality requirement.  The existence of shared legal issues with divergent factual predicates

8   is sufficient."  *Gonzalez v. U.S. Immigr. & Customs Enf't,* 975 F.3d 788, 807 (9th Cir.

9   2020) (quotation marks, citation, and brackets omitted); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D.

10  314, 321 (N.D. Cal. 2013) (concluding that the commonality requirement was satisfied where

11  plaintiffs contended that all non-exempt employees were subject to the same wage and hour

12  policies and practices).  A single common question is sufficient to satisfy Rule 23(a)(2).  *Dukes,*

13  564 U.S. at 359.  Here, plaintiffs allege that all class members were subject to the same practices

14  as non-exempt piece rate workers during the class period, and that resolution of the class claims

15  depends on common questions of law and fact about the class members' employment with

16  defendants, including: (1) whether Mesa violated the AWPA and the parties' working

17  arrangement; (2) whether Mesa failed to pay class members all California minimum wages; (3)

18  whether Mesa failed to pay California overtime wages; (4) whether Mesa failed to provide meal

19  periods; (5) whether Mesa failed to provide rest breaks; (6) whether Mesa failed to reimburse class

20  members for all job-related expenses; (7) whether Mesa failed to provide accurate itemized wage

21  statements; (8) whether Mesa failed to pay all wages earned at the time it stopped employing the

22  class members; (9) whether Mesa failed to pay class members for reporting and waiting time; (10)

23  whether Mesa violated California's Unfair Competition Law; and (11) whether Mesa is subject to

24  penalties under PAGA.  Dkt. No. 1 ¶¶ 19-49, 55; Dkt. No. 26 at 1.  Accordingly, the commonality

25  requirement is met.

26              **c.      Typicality**

27       Rule 23(a) requires that "the claims or defenses of the representative parties are typical of

28  the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    requirement is to assure that the interest of the named representative aligns with the interests of the

2    class," and the "test of typicality is whether other members have the same or similar injury,

3    whether the action is based on conduct which is not unique to the named plaintiffs, and whether

4    other class members have been injured by the same course of conduct." *Hanon v. Dataproducts*

5    *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotations and citations omitted). The typicality

6    requirement is satisfied where representative claims "are reasonably coextensive with those of

7    absent class members; they need not be substantially identical." *Staton*, 327 F.3d at 957 (internal

8    quotations and citation omitted). However, "class certification is inappropriate where a putative

9    class representative is subject to unique defenses which threaten to become the focus of the

10   litigation." *Hanon*, 976 F.2d at 508 (internal quotations and citation omitted). Here, plaintiffs'

11   claims meet the typicality requirement because plaintiffs, like every other class member, worked

12   for defendants as non-exempt hourly and piece rate work employees and claim that they were

13   subject to the same alleged unlawful wage and hour practices. Dkt. No. 1 ¶ 54; Dkt. No. 35-1

14   ¶¶ 2-4; Dkt. No. 35-2 ¶¶ 2, 4; *Tijero*, 301 F.R.D. at 322 (concluding that the typicality requirement

15   was met where plaintiffs sought to represent all non-exempt employees that were not properly

16   compensated due to defendant's policies and practices).

             **d.    Adequacy of representation**

18          Rule 23(a) requires that "the representative parties will fairly and adequately protect the

19   interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing this factor, the Court addresses two

20   legal issues, i.e., whether plaintiffs and their counsel (1) have any conflicts of interest with other

21   class members, and (2) will prosecute the action vigorously on behalf of the class. *Staton*, 327

22   F.3d at 957. The record does not indicate the presence of any conflicts of interest. No issues have

23   been raised with respect to plaintiffs' counsel's competence, and they each aver that they have

24   been practicing attorneys for nearly 20 and 30 years, with considerable experience litigating

25   employment and wage-and-hour matters, particularly for agricultural laborers. Dkt. No. 26-2 ¶¶ 2-

26   3; Dkt. No. 26-3 ¶¶ 6-11. According to counsel, early on, Mesa provided "substantial

27   information" about its practices and payroll data relevant to assessing liability and calculating

28   damages. Dkt. No. 26-2 ¶ 6. The parties thereafter suspended formal litigation and engaged in

1    early mediation in which at least Mr. Miguel-Sanchez participated.  *Id.*; Dkt. No. 35-2 ¶ 6.

2    Although the parties did not settle at mediation, they continued their negotiations until reaching

3    settlement.  Dkt. No. 26-2 ¶ 6.  The Court finds that the adequacy requirement is met.

### 2.    Rule 23(b)(3) certification

5          Plaintiffs seek to certify the proposed class under Rule 23(b)(3), which requires that "the

6    questions of law or fact common to class member predominate over any questions affecting only

7    individual members" and "that a class action is superior to other available methods for fairly and

8    efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Based on its review of the

9    record, the Court concludes that the predominance and superiority requirements are met.

10         The "predominance inquiry tests whether proposed classes are sufficiently cohesive to

11   warrant adjudication by representation," and "asks whether the common, aggregation-enabling,

12   issues in the case are more prevalent or important than the non-common, aggregation-defeating,

13   individual issues."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal

14   quotations and citations omitted).  "When one or more of the central issues in the action are

15   common to the class and can be said to predominate, the action may be considered proper under

16   Rule 23(b)(3) even though other important matters will have to be tried separately, such as

17   damages or some affirmative defenses peculiar to some individual class members."  *Id.* (internal

18   quotations and citations omitted).  In the present case, plaintiffs have satisfied the predominance

19   factor because the issues in dispute concern defendants' allegedly unlawful wage and hour

20   policies, which generally apply to all class members.  The record suggests that the only individual

21   question is the amount of damages to which each putative class member may be entitled in the

22   event Mesa is found liable.  However, individualized damages alone do not defeat Rule 23(b)(3)

23   certification.  *Id*; *Leyva v. Medline Indus.*, *Inc*., 716 F.3d 510, 514 (9th Cir. 2013).

24         In determining whether "a class action is superior to other available methods for fairly and

25   efficiently adjudicating the controversy," courts consider four nonexclusive factors: (1) the class

26   members' interests in individually controlling the prosecution or defense of separate actions;

27   (2) the extent and nature of any litigation concerning the controversy already commenced by or

28   against the class; (3) the desirability of concentrating the litigation of the controversy in the

United States District Court
Northern District of California

United States District Court
Northern District of California

particular forum; and (4) the difficulties likely to be encountered in managing a class action.  Fed. R. Civ. P. 23(b)(3).  Plaintiffs have met the superiority requirement.  The record presented indicates that the damages at issue likely are not great enough for individual putative class members to want to litigate separate actions against Mesa, and the Court is unaware of any other litigation already commenced by or against the class.  Permitting this case to proceed as a single class action is an efficient use of the Court's and the parties' resources and the most expeditious way to resolve common questions about defendants' alleged wage and hour practices.  Further, the present forum is appropriate, and there are no obvious difficulties in managing this case as a class action.

In sum, for purposes of settlement, provisional certification of a Rule 23 class is appropriate.

**B.    Class Representatives and Class Counsel**

Because plaintiffs meet the Rule 23(a) requirements, the Court provisionally appoints William Miguel-Sanchez, Luis Antonio Meza-Estrada, and Sergio Jimenez-Cruz as class representatives.

Additionally, when a court certifies a class, it must also appoint class counsel.  Fed. R. Civ. P. 23(c)(1)(B).  In appointing class counsel, the Court considers:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
> (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)  counsel's knowledge of the applicable law; and
> (iv)  the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Here, plaintiffs' counsel have investigated and litigated this action and have submitted declarations describing their expertise in representing plaintiffs in class actions, especially in the area of wage and hour violations.  Dkt. Nos. 26-2, 26-3.  Nothing in the record suggests that counsel have not and will not continue to vigorously litigate this action.  Accordingly, the Court provisionally appoints Santos Gomez and Dawson Morton of the Law Offices of Santos Gomez as class counsel for settlement purposes only.

### C.     Preliminary Settlement Approval

Rule 23(e) requires court approval of a proposed settlement of a class action.  Fed. R. Civ. P. 23(e).  The approval process proceeds in two steps.  *Lusby v. Gamestop, Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013).  First, the Court conducts a preliminary fairness evaluation.  If the Court preliminarily approves the settlement, then notice to the class is disseminated and the Court sets a final hearing for approval of the settlement.  *Id.*  Ultimately, a settlement should only be approved if it is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).  In determining whether a proposed settlement meets this standard, the Court does not have "the ability to delete, modify, or substitute certain provisions," and "[t]he settlement must stand or fall in its entirety.'"  *Staton*, 327 F.3d at 969 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The Ninth Circuit has described several factors a court may consider in evaluating the fairness of a proposed settlement:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *Hanlon*, 150 F.3d 1011).  Rule 23(e)(2) requires a court to consider a similar list of factors before approving a settlement, including whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and

1

2

(D) the proposal treats class members equitably relative to each other.

3  Fed. R. Civ. P. 23(e)(2).  This list of factors is not intended to displace any factors currently

4  considered by courts, "but rather to focus the court and the lawyers on the core concerns of

5  procedure and substance that should guide the decision whether to approve the proposal."  Fed. R.

6  Civ. P. 23(e) advisory committee note to 2018 amendment.[3]

7        The Court's evaluation of a settlement reached prior to class certification "requires a

8  higher standard of fairness and a more probing inquiry than may normally be required under Rule

9  23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks

10  omitted).  Additionally, courts "must be particularly vigilant not only for explicit collusion, but

11  also for more subtle signs that class counsel have allowed pursuit of their own self-interests and

12  that of certain class members to infect the negotiations."  *In re Bluetooth*, 654 F.3d at 947.  Such

13  signs include (1) class counsel's receipt of a disproportionate distribution of the settlement, (2) a

14  "clear sailing" agreement "providing for the payment of attorneys' fees separate and apart from

15  class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees

16  and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) an

17  arrangement whereby fees that are not awarded are reverted to the defendants, rather than added to

18  the class fund.  *Id.*

19        As relevant to this case, the Court considers the following factors: (1) strength of the

20  plaintiffs' case and risks of litigation; (2) benefits offered in settlement; (3) stage of proceedings

21  and settlement negotiations; (4) adequacy of the class notice and plan for distribution; (5)

22  proposed attorneys' fee award and preferential treatment; and (6) adequacy of representation and

23  absence of collusion.

24                  **1.**      **Strength of case and risks of litigation**

25        Plaintiffs assert that they face substantial uncertainty in proceeding with the litigation.

26

27

28

United States District Court
Northern District of California

---

[3] The Ninth Circuit has not specifically addressed the effect, if any, of the 2018 amendments to Rule 23(e)(2) on a district court's analysis of a proposed settlement at the preliminary approval stage.  *See Campbell*, 951 F.3d at 1121 n.10.

They explain (and Mesa does not dispute) that Mesa would have opposed class certification.  Dkt. No. 26 at 17.  Additionally, Mesa has asserted fifteen affirmative defenses in its answer to the complaint, one of which is that many members of the putative class signed binding arbitration agreements that preclude participation in this class action.  Dkt. No. 9 at 17–18.  According to plaintiffs, two of them and approximately half of the proposed class members had signed such agreements.  Dkt. No. 26 at 17; Dkt. No. 35 at 2.  There exists, therefore, a strong possibility that the class members bound by arbitration agreements would have been unable to proceed with their claims in this action and would be required to separately arbitrate their claims with Mesa.  *See, e.g.*, *Stern v. Gambello*, 480 F. App'x 867, 869–70 (9th Cir. 2012) (approving of district court's consideration at the final approval stage of, among other things, the risk that defendant would succeed in enforcing arbitration in another state and a potential change in California law with respect to arbitration); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1123 (N.D. Cal. 2016) (considering risk to plaintiffs that the Ninth Circuit would find arbitration clauses valid and enforceable, which "would substantially change the scope and course of Plaintiffs' case, as it would likely require the vast majority of the class to go to arbitration on their non-PAGA claims, thus jeopardizing the scope and potential viability of the class action at bar.  Plaintiffs face a considerable risk that they will not proceed as a class action in any court, or at least be limited to a class action greatly reduced in size").

### 2.    Benefits offered in settlement

The settlement agreement offers benefits to all parties.  Although the agreement's definition of the putative class differs from the definition alleged in the complaint, based on the arguments made at the hearing and plaintiffs' supplemental brief, the Court understands the agreement defines the class in a manner that encompasses all of the putative class members identified in the complaint, and that the settlement class neither excludes workers within the scope of the complaint, nor binds workers not within the scope of the complaint.  Dkt. No. 35 at 1–2.

Plaintiffs assert (and Mesa does not dispute) that Mesa's potential exposure across all claims totals $4,014,813.44.  Dkt. No. 26-2 ¶ 10; Dkt. No. 35 at 3–4.  This estimated exposure includes claims that are possibly subject to arbitration, as described above.  Dkt. No. 26 at 17; Dkt.

United States District Court
Northern District of California

1   No. 35 at 2.  The gross settlement amount represents a gross recovery of 46% and a net recovery

2   of 35% after accounting for counsel's fees, costs, and incentive payments, which falls within the

3   range of possible approval.  Dkt. No. 35 at 4.  *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306

4   F.R.D. 245, 256 (N.D. Cal. 2015) (concluding in a wage/hour class action that the total common

5   fund, before deduction for fees and costs, represented between 11% and 27% of plaintiffs' total

6   potential recovery and was fair).  The settlement provides each class member an average net

7   recovery of $2,025.68.  Dkt. No. 26-2 ¶ 11.

8          Beyond monetary compensation, the settlement agreement provides for significant non-

9   monetary benefits.  Mesa has provided a declaration from one of its owners testifying that it has

10  implemented and will continue to maintain specific employment practices intended to address the

11  alleged violations, including providing full rest and meal breaks, tracking of and payment for pre-

12  shift work, payment for rest periods, and provision of tools and equipment such as headlamps.

13  Dkt. No. 32-1.

14         The settlement agreement also provides benefits to Mesa with respect to claims released.

15  At the hearing, the Court expressed concerns regarding the scope of the release, particularly as to

16  the parties and the claims proposed to be released.  As written, the proposed release includes not

17  only claims against Mesa and its affiliates but also claims against "third parties such as

18  Earthbound Farm, LLC," who are Mesa's clients to whom Mesa provides farmworker labor on a

19  contract basis but are not parties to the action.  Dkt. No. 26-2 at 10.  In response to the Court's

20  concern about the release of unidentified third parties, plaintiffs' supplemental brief represents that

21  the parties subsequently agreed to limit the release of third parties to Earthbound Farm, LLC,

22  Growers Express, LLC, The Nunes Company, Inc., and Ocean Mist Foods, LLC.  Dkt. No. 35 at

23  2.  This third-party release is limited to claims arising during the class period and claims arising in

24  circumstances where Mesa was responsible for paying the class members.  *Id.*

25         As to the claims proposed to be released, the Court noted at the hearing that the settlement

26  agreement releases any claim for violation of California Labor Code § 203, even though plaintiffs

27  did not plead such a claim in the complaint.  Section 203 concerns payment of wages upon

28  separation.  The complaint alleges nonpayment of wages as the result of, among other things,

United States District Court
Northern District of California

United States District Court
Northern District of California

1  inaccurate recording of hours worked based on various improper timekeeping and meal/rest period

2  practices.  Dkt. No. 1 ¶¶ 21-24, 27, 29-47.  These facts arguably could support a claim for

3  violation of section 203.   Because the proposed release extends only to claims premised upon the

4  facts set forth in the complaint, the Court finds that the scope of the release is acceptable.  *See*

5  *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a

6  party from bringing a related claim in the future even though the claim was not presented and

7  might not have been presentable in the class action, but only where the released claim is based on

8  the identical factual predicate as that underlying the claims in the settled class action.") (internal

9  quotation marks and citations omitted); *Nen Thio*, *v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D.

10  Cal. 2014).

11     Finally, the Court observed at the hearing that the parties had not allocated any of the

12  settlement funds specifically to resolving the PAGA claim.  Dkt. No. 26-2 ¶ 12.  "A PAGA

13  representative action is . . . a type of qui tam action" in which a private plaintiff pursues a dispute

14  between an employer and the California Labor and Workforce Development Agency ("LWDA")

15  on behalf of the state.  *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D.

16  Cal. 2019) (internal quotation marks omitted).  Because of its qui tam nature, the Court must

17  review and approve the settlement of a PAGA claim to assess whether such settlement is

18  "fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes."  *Id.* at

19  971–72.  In particular, a court must be mindful of the "temptation to include a PAGA claim in a

20  lawsuit to be used merely as a bargaining chip, wherein the rights of individuals who may not

21  even be members of the class and the public may be waived for little additional consideration in

22  order to induce the employer to agree to a settlement with the class."  *Id.* at 972 (quoting

23  *O'Connor*, 201 F. Supp. 3d at 1134) (internal quotation marks omitted).  A party seeking approval

24  of a PAGA settlement must also submit the proposed settlement to the LWDA for comment.  *Id.* at

25  971.

26     Here, the lack of allocation of any settlement funds to the PAGA claim warrants scrutiny.

27  Courts in this district have raised concerns about settlements amounting to less than 1% of the

28  total value of a PAGA claim.  *Id.* at 973 (citing cases).  When considering such settlements, courts

United States District Court
Northern District of California

in this district have looked to the LWDA's views or lack thereof, whether the courts would be likely to exercise their discretion under California Labor Code § 2699(e)(2) to reduce the amount of PAGA penalties should litigation proceed to judgment, whether the settlement provides additional non-monetary relief, and whether the Rule 23 settlement is "relatively substantial" under the circumstances of the case. *Id.* at 972–74.

Here, the parties do not provide an estimate for Mesa's total potential exposure for PAGA penalties. PAGA penalties are assessed in the amount of $100 per employee per pay period for an initial Labor Code violation, and $200 per employee per pay period for each subsequent violation. Cal. Labor Code § 2699(f)(2). Considering the number of class members, the number of pay periods in the class period, and the number of alleged Labor Code violations, plaintiffs could potentially claim very substantial PAGA penalties. Plaintiffs advise that despite being provided notice of the proposed settlement in this action, the LWDA has not appeared or otherwise objected to the parties' proposed settlement. Dkt. No. 28 ¶¶ 2-3, Dkt. No. 35-4 ¶ 3. As described above, the settlement agreement provides significant non-monetary benefits directed to remedying the alleged violations of the Labor Code, as well as monetary benefits. At least one California court has approved an employment class action settlement allocating no value to the PAGA claims where the settlement afforded the class meaningful benefits. *Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (no abuse of discretion in approving a settlement that allocated $0 to the PAGA claims, where the penalty claims were at issue and resolved as part of the overall settlement of the case); *see also Wanderer v. Kiewit Infrastructure W. Co.*, No. 2:18-cv-02898 WBS-DB, 2020 WL 5107618, at *3 (E.D. Cal. Aug. 31, 2020) (approving settlement and dismissal of individual PAGA claim without allocating any money to the PAGA claim where plaintiff asserted, among other things, violations of Labor Code §§ 201, 226 and the UCL). On balance, in view of the significant non-monetary benefits to the class and the amount of the monetary payments to be made to class members, the Court finds that the settlement agreement serves the purpose of PAGA: private enforcement of the Labor Code. *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 86 (2020) ("The Legislature's sole purpose in enacting PAGA was 'to augment the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor

1  Code as representatives of the Agency.'") (quoting *Iskanian v. CLS Transp. Los Angeles, LLC*, 59

2  Cal. 4th 348, 383 (2014)).

3           The benefits to all parties of settlement weigh in favor of preliminary approval.

4                    **3.     Stage of proceedings and settlement negotiations**

5           In the present case, the parties reached a settlement after engaging in initial discovery and

6  after participating in a full day of mediation, followed by additional settlement discussions.  These

7  circumstances weigh in favor of granting preliminary settlement approval.  *See Noroma v. Home*

8  *Point Fin. Corp.*, No. 17-cv-07205-HSG, 2019 WL 1589980, at *7 (N.D. Cal., Apr. 12, 2019)

9  ("An initial presumption of fairness is usually involved if the settlement is recommended by class

10  counsel after arm's-length bargaining.") (citation omitted); *Nen Thio*, 14 F. Supp. 3d at 1334

11  (concluding that a settlement appeared to be the product of serious, informed and non-collusive

12  negotiations where the settlement was reached after a thorough investigation of the facts and

13  settlement negotiations occurred with the assistance of a mediator).

14                    **4.     Adequacy of notice and plan for distribution**

15           The notice to be delivered to class members includes the information required by Rule 23

16  of the Federal Rules of Civil Procedure.  Specifically, the proposed class notice describes the

17  nature of the action, the definition of the class, and the class-wide claims.  Dkt. No. 26-4.  The

18  proposed notice further explains that class members may appear through an attorney and that the

19  Court will exclude those members requesting exclusion.  The notice also specifies the time

20  requirements and manner of requesting exclusion, as well as the binding effect of a class-wide

21  judgment.  *See* Fed. R. Civ. P. 23(c)(2)(B) (stating that "[t]he notice must clearly and concisely

22  state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class

23  certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an

24  appearance through an attorney if the member so desires; (v) that the court will exclude from the

25  class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and

26  (vii) the binding effect of a class judgment on members under Rule 23(c)(3)").  In addition, the

27  notice explains that class members may object, indicates the time and place of the final approval

28  hearing, provides information regarding the attorneys' fees and incentive awards to be requested

United States District Court
Northern District of California

by class counsel, and states that additional information regarding the settlement is available through mailed notice, whose contact information is provided in the notice.  Dkt. No. 26-4.

The parties propose to supplement the mailed notice with notice through WhatsApp.  Dkt. No. 35 at 9.  Other courts in this district have approved use of WhatsApp to provide supplemental notice of a class action settlement to agricultural workers.  *See, e.g.*, *Gomez-Gasca v. Future AG Mgt., Inc.*, No. 19-cv-2359-YGR, 2020 WL 6149688, at *3 (N.D. Cal. Oct. 20, 2020) (finding combination of mailed notice and WhatsApp messages to "provide[] the best notice practicable"); *Magana-Muñoz v. W. Coast Berry Farms, LLC*, No. 5:20-cv-02087-EJD, 2020 WL 3869188, at *7 (N.D. Cal. July 9, 2020) (directing settlement administrator to consider additional means of notice beyond mailed notice, such as WhatsApp); *Hernandez v. Dutton Ranch Corp.*, No. 19-cv-00817-EMC, 2020 WL 1274908, at *3 (N.D. Cal. Mar. 17, 2020) (same).

The settlement administrator shall distribute funds among class members who do not opt out on a pro rata basis according to the number of pay periods they performed work for Mesa during the class period.  Dkt. No. 26-1 at 7.  Any remaining funds shall be divided equally between the cy pres recipients.  This plan for distribution appears to be straightforward and contains no obvious deficiencies.

These factors favor preliminary approval.  The Court approves the proposed notice to the class members, provided that the URL for the settlement website is included in the mailed notice and in any WhatsApp messages.

### 5.   Proposed attorneys' fee award and preferential treatment

Here, the settlement agreement provides for an attorneys' fee award of up to $400,000, which represents 21.6% of the gross settlement amount and 28.2% of the proposed net settlement amount.  Dkt. No. 26 at 2–3.  The Ninth Circuit has approved a benchmark award of 25% of the common fund, and federal courts have also approved fee awards of 30% or higher.  *Bellinghausen*, 306 F.R.D. at 260 (citing *In re Bluetooth*, 654 F.3d at 947; *Staton*, 327 F.3d at 952; *Hanlon*, 150 F.3d at 1011; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  The proposed fees here are thus not a cause for concern at the preliminary approval stage.

With respect to preferential treatment, the settlement agreement provides that funds will be

allocated among class members on a pro rata basis according to the number of pay periods during which they performed work for Mesa during the class period.  Dkt. No. 26-1 at 7.  This proposed distribution does not appear to grant preferential treatment to any class members.

While the settlement agreement authorizes plaintiffs' application for incentive payments not to exceed $7,500 each, these incentive awards—if finally approved—do not necessarily render the settlement unfair, since "the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198 EMC, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).  Here, the proposed pro rata distribution of the net settlement amount based on the number of pay periods for each class member is equitable.  Plaintiffs request a $7,500 incentive award each, which is considerably higher than the recovery each individual class member likely will receive (estimated to be an average of $2,025.68).  While incentive awards are permissible, they must also be reasonable. *Staton*, 327 F.3d at 977.  Courts must evaluate such awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Id*. (internal quotations and citation omitted).  Courts in this district have recognized that a $5,000 incentive award, as a general matter, is a reasonable amount.  *See Schofield v. Delta Air Lines, Inc.*, No. 18-cv-00382-EMC, 2019 WL 955288 at *7 (N.D. Cal. Feb. 27, 2019).  The request for a $7,500 incentive payment does not, by itself, suggest that plaintiffs failed to settle this matter in the best interests of the entire class.  As discussed above, however, the present litigation settled relatively early in the case with little substantive litigation, and plaintiffs' moving papers provide minimal explanation for the requested award, aside from citing other actions awarding larger amounts.  *See* Dkt. No. 26 at 19–20; Dkt. No. 26-2 ¶ 14 (counsel's declaration asserting generally that the requested service award amount is "justified based on the size of the Gross Settlement Amount, the average amount of settlement benefits payable to class members, the risk and burden of litigation undertaken by Plaintiffs, including the risk of having to pay costs and attorney's fees

and the risk of potential blacklisting for suing an employer, the antagonism towards Plaintiffs created by supervisors, and the amount of time devoted by Plaintiffs to this case, which included participating in the mediation and discussions, including those for nonmonetary changes, which led to a settlement").  Plaintiffs represent that when they move for final approval, they will provide declarations attesting to the amount of time they have devoted to this case and explaining why they are entitled to the requested amount.  Dkt. No. 26 at 19.  The Court expects a more fulsome explanation from each plaintiff at that time.

On this record, the Court finds that this factor weighs in favor of preliminary approval.

### 6. Adequacy of representation and absence of collusion

As discussed above, the Court finds that the plaintiffs and their counsel are qualified to serve as class representatives and class counsel.  *See supra* Section III.B.

Nothing in the record before the Court suggests any kind of collusion between the parties that would cause the Court to question the settlement agreement.  The settlement does not provide for a disproportionate amount of attorneys' fees or payment of fees separate and apart from class funds, and any fees not awarded will be distributed to cy pres recipients, not reverted to Mesa.  *In re Bluetooth*, 654 F.3d at 947 (describing circumstances suggesting collusion).  The fact that the parties did not reach an agreement until after an unsuccessful mediation further suggests an absence of collusion.  *Nen Thio*, 14 F. Supp. 3d at 1334 (concluding that a settlement appeared to be the product of serious, informed and non-collusive negotiations where the settlement was reached after a thorough investigation of the facts and settlement negotiations occurred with the assistance of a mediator).

Based on the above information, the Court finds that the factors weigh in favor of granting preliminary approval.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants plaintiffs' motion for preliminary approval, conditionally certifies the class, and approves the proposed form of notice with the above described modification.  By **May 10, 2021,** the parties shall file on the docket their revised settlement agreement reflecting revisions made to the third-party releases described above.

21

The Court also approves the proposed class counsel, class representatives, and claims administrator.  Plaintiffs' motion(s) for final approval, for incentive awards, and for class counsel fees and costs must be filed no later than the date on which the claims administrator mails the notice, claim form, and exclusion form to the class members.

The Court will hold a final approval hearing on **September 14, 2021, at 10:00 a.m.** in Courtroom 2, 5th Floor, 280 South First Street, San Jose, California 91153.

**IT IS SO ORDERED.**

Dated: May 3, 2021

VIRGINIA K. DEMARCHI
United States Magistrate Judge