1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6                          SAN JOSE DIVISION

7

8    WILLIAM MIGUEL-SANCHEZ, et al.,          Case No.  20-cv-00823-VKD

              Plaintiffs,
9
                                              **ORDER RE FINAL APPROVAL OF**
10        v.                                  **CLASS ACTION SETTLEMENT**

11   MESA PACKING, LLC,                        Re: Dkt. Nos. 49, 51

              Defendant.
12

13

14        In this wage-and-hour class action dispute, plaintiffs William Miguel-Sanchez, Luis

15   Antonio Meza-Estrada, and Sergio Jimenez-Cruz allege that defendant Mesa Packing, LLC

16   ("Mesa") violated the California Labor Code; the Migrant and Seasonal Agricultural Workers

17   Protection Act ("AWPA"), 29 U.S.C. §§ 1801 et seq.; and California's Unfair Competition Law

18   ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.  On May 3, 2021, the Court issued an order

19   granting plaintiffs' motion for preliminary approval of the parties' class action settlement and

20   conditionally certifying the class.[1]  Dkt. No. 37.  Now before the Court are plaintiffs' motion for

21   final approval of a class action settlement (Dkt. No. 51), and plaintiffs' motion for attorneys' fees,

22   costs, and incentive awards (Dkt. No. 47).  Defendant does not oppose either motion.  The Court

23   held a fairness hearing regarding final approval and fees on September 28, 2021.  Dkt. No. 56.  As

24   directed, on October 5, 2021 plaintiffs filed a supplemental submission addressing delivery of

25   notice to the class and distribution of the settlement.  Dkt. Nos. 57, 58.

26

27   ─────────────────────
[1] This approval was subsequently withdrawn.  Dkt. No. 39.  The Court reinstated its approval after
28   plaintiffs filed a consent judgment properly limiting the third-party release language identified by
     the Court.  Dkt Nos. 46, 47.

United States District Court
Northern District of California

1    Having considered the arguments of counsel and the papers submitted, the Court grants

2    final approval of the settlement agreement, grants the requested attorneys' fees and costs, and

3    grants the requested incentive awards for the class representatives as set forth below.[2]

4    **I.    BACKGROUND**

5    Plaintiffs are agricultural field workers who are or were employed by Mesa, a farm-labor

6    contractor, on a piece-rate and hourly basis.  Dkt. No. 1 ¶¶ 1, 3, 7–11, 17–18, 30.  Mr. Miguel-

7    Sanchez has worked for Mesa since February 2009, while Mr. Meza-Estrada and Mr. Jimenez-

8    Cruz worked for Mesa between September 2014 and July 2021.  *Id.* ¶¶ 7–9; Dkt. No. 51-6 ¶¶ 3, 9;

9    Dkt. No. 51-7 ¶¶ 3, 9.

10   In their complaint, plaintiffs allege that defendant did not pay them and other class

11   members for time spent on "pre-shift exercises" and distribution of items and tools needed for

12   their work, and that Mesa did not accurately record their field arrival times and work performed

13   before their scheduled shifts.  Dkt. No. 1 ¶¶ 21–24.  For example, plaintiffs were required to buy,

14   maintain, and replace their own headlamps, which were required for predawn labor.  *Id.* ¶¶ 25–29.

15   Mesa also did not accurately record the time plaintiffs spent performing piece-rate work or provide

16   accurate paystubs.  *Id.* ¶¶ 30–35.  Further, although plaintiffs were permitted to work during their

17   30-minute unpaid meal periods, Mesa automatically deducted the full 30-minute period from their

18   total hours worked daily.  *Id.* ¶¶ 35–39.  Nor did Mesa compensate plaintiffs for any late, short, or

19   missed meal periods or breaks—of which there were many, as plaintiffs regularly worked without

20   at least one required meal period or rest break.  *Id.* ¶¶ 41–46.  Finally, plaintiffs were occasionally

21   sent home without receiving at least half the usual day's work.  *Id.* ¶¶ 39–40.

22   On plaintiffs' initial unopposed motion for preliminary approval of the settlement (Dkt.

23   No. 26), which they later supplemented upon order of the Court (Dkt. Nos. 34, 35), the Court

24   conditionally certified a class action under Federal Rule of Civil Procedure 23, designated the

25   named plaintiffs as class representatives, appointed plaintiffs' counsel as class counsel, and

26

27   _____

     [2] All parties have expressly consented that all proceedings in this matter may be heard and finally
28   adjudicated by a magistrate judge.  Dkt. Nos. 11, 13; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  The
     consent of absent class members is not required for this Court to exercise jurisdiction over this
     matter.  *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017).

United States District Court
Northern District of California

1    reserved judgment on plaintiffs' request for attorneys' fees, costs, and incentive awards.  Dkt. No.

2    37.  This preliminary approval was then briefly withdrawn (Dkt. No. 39), but the Court reinstated

3    its approval after plaintiffs amended the proposed consent judgment to conform the third-party

4    release language to the representations previously made to the Court.  Dkt. Nos. 46, 47, 48.

5        In sum, the parties have agreed to a non-reversionary settlement that includes a release of

6    claims in return for injunctive relief and Mesa's payment of $1,850,000 ("the gross settlement

7    amount").  The settlement amount will be paid into a common fund, to be distributed as follows:

8    (1) attorneys' fees and costs awarded to class counsel, not to exceed $400,000 for fees and $7,500

9    for costs; (2) incentive payments to each of the named plaintiffs of $7,500; and (3) the remaining

10   sum, $1,420,000 ("the net settlement amount") to each class member based on the number of pay

11   periods in which he or she performed piece work for Mesa during the class period (February 4,

12   2016 to October 23, 2020).  Dkt. No. 48 at 2, 6, 7.  The entire net settlement amount will be

13   distributed to class members who do not exclude themselves from the settlement.  *Id.* at 7.  The

14   cost of settlement administration will be paid in full by the defendant separately.  Dkt. No. 48 at 3;

15   Dkt. No. 51-2 ¶ 15.  In the event that settlement checks go uncashed, any funds remaining shall be

16   given as a cy pres award to a nonprofit healthcare provider, Salud Para La Gente, in Watsonville,

17   California.  *Id.*

18       As part of the settlement agreement, Mesa has also agreed to implement and enforce

19   various employment practices to address the alleged wage-and-hour violations, such as providing

20   full rest and meal breaks, tracking of and payment for pre-shift work, payment for rest periods,

21   and provision of tools and equipment such as headlamps.  Dkt. No. 32-1; Dkt. No. 38 at 5–6.

22       Plaintiffs now move for final approval of the settlement, and class counsel move for

23   attorneys' fees, costs, and service awards.  Dkt. Nos. 49, 51.  Plaintiffs inform the Court that the

24   total number of settlement class members is not 701 as previously estimated (Dkt. No. 48 at 2),

25   but 699.  Dkt. No. 51-1 at 1; Dkt. No. 51-2 ¶¶ 4–5.  Of the 699 notices of class action settlement

26   sent by mail, 587 were successfully delivered after several rounds of address tracing.  Dkt. No. 58-

27   1 ¶ 5.  The settlement administrator further reports that of the 86 remaining class members for

28   whom mail was initially undeliverable, 7 received notice by means of WhatsApp messaging, and

19 provided new addresses to the settlement administrator via phone or email and subsequently received mailed notice. Dkt. No. 58-1 ¶ 6. In addition, on June 21, 2021, the settlement administrator launched a website as a resource for class members to obtain additional information. Dkt. No. 51-2 at 3-4. As of October 5, 2021, there have been at least 110 visits to this website. Dkt. No. 58 at 2. At the same time, the settlement administrator also activated a toll-free telephone line that provides information to callers, who may request a callback from a live representative of the settlement administrator. Dkt. No. 51-2 at 4. As of September 2, 2021, this toll-free telephone line has received 23 callers. *Id.* In total, 613 class members, or 87.7% of the class, are known to have received actual notice of the proposed settlement. *Id.* ¶ 8.

Plaintiffs and the settlement administrator inform the Court that no objections have been filed, and two class members have opted out.[3] Dkt. No. 51-1 at 11; Dkt. No. 51-2 ¶ 12; Dkt. 58 at 3. The Court has not received any objections, and no one appeared at the September 28, 2021 final fairness hearing to state any objection to the proposed settlement.

## II.    LEGAL STANDARD

Court approval is required for the settlement of Rule 23 class actions. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). The Ninth Circuit has repeatedly noted that a strong judicial policy favors settlement of Rule 23 class actions. *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). However, no broad presumption of fairness applies to such settlements. *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). And where the parties reach a settlement before class certification, courts must "employ[] extra caution and more rigorous scrutiny," *id.*, and "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach

---

[3] The Court is further informed that no class member expressed disagreement or negative remarks that could fairly be characterized as an objection to the settlement terms. Dkt. No. 58 at 3.

1    of fiduciary duty owed the class during settlement.  Accordingly, such agreements must withstand

2    an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is

3    ordinarily required under Rule 23(e) before securing the court's approval as fair.").

4        In the first stage of the process, the Court preliminarily approves the settlement pending a

5    final fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class.

6    *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015) (citation omitted).  In

7    the second stage, at the final fairness hearing, and after notice has been given to the putative class

8    members, the Court hears any objections to the treatment of the litigation as a class action or to the

9    settlement terms.  *Id.* (citing *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014)).  The

10   Court then determines whether the parties may settle the class action pursuant to the agreed-upon

11   terms.  *Id.*

### III.    DISCUSSION

####     A.    Motion for Final Approval of Class Action Settlement

12        First, the Court assesses whether a class exists pursuant to Rule 23 of the Federal Rules of

13

14   Civil Procedure.  *Staton*, 327 F.3d at 952.  Second, the Court assesses whether the proposed

15   settlement is "fundamentally fair, adequate, and reasonable," considering "the settlement taken as

16   a whole, rather than the individual component parts, that must be examined."  *Id.* (internal

17   quotations and citation omitted).

18

####         1.    Final Class Certification of the Settlement Class

19        Class certification under Rule 23 requires two steps.  First, plaintiffs must satisfy the four

20

21   prerequisites under Rule 23(a), namely numerosity, commonality, typicality, and adequacy of

22   representation.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  Additionally, plaintiffs

23   must show that at least one of the bases for Rule 23(b) is met.  *Amchem. Prods., Inc. v. Windsor*,

24   521 U.S. 591, 614 (1997).  Here, plaintiffs seek certification under Rule 23(b)(3) and therefore

25   must show that "questions of law or fact common to class members predominate over any

26   questions affecting only individual members, and that a class action is superior to other available

27   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

28        In its prior order regarding preliminary approval of the settlement, the Court found that the

United States District Court
Northern District of California

1    putative class satisfied Rule 23(a)'s numerosity, commonality, typicality, and adequacy of

2    representation requirements, as well as Rule 23(b)(3)'s predominance and superiority

3    requirements.  Dkt. No. 37.  Plaintiffs' present motion for final approval does not indicate that

4    there have been any changes or developments that would require the Court to alter its prior

5    analysis or conclusions.  Accordingly, the Court concludes that the Rule 23 requirements for class

6    certification have been met and approves for final certification a Rule 23 class of all persons who

7    worked for defendant Mesa as non-exempt piece rate workers during the period of February 4,

8    2016 to October 23, 2020 and who allege violations under California law as described in claims

9    one through ten of the complaint.  Dkt. No. 1 at 9–21.

**2.    Rule 23(c)(2) Notice Requirements**

11       If the Court certifies a class under Rule 23(b)(3), it "must direct to class members the best

12   notice that is practicable under the circumstances, including individual notice to all members who

13   can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The rule governs both

14   the form and content of a proposed notice and requires that the notice "clearly and concisely" state

15   "the nature of the action," the "definition of the class certified," the "class claims, issues, or

16   defenses," information about appearing and opting out, and "the binding effect of a class judgment

17   on members."  *Id.*  The Ninth Circuit has held "that neither due process nor Rule 23's standard

18   necessarily require actual notice," *SFBSC Mgmt.*, 944 F.3d at 1046 n.7, and parties are not

19   required to implement all potential options in every case, *id.* at 1047.  The notice "requirement is

20   designed to ensure that class notice procedures comply with the demands of due process" and

21   essentially means that the method of providing notice "must be such as [a person] desirous of

22   actually informing the absentee might reasonably adopt to accomplish it."  *Id.* at 1045–46 (quoting

23   *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)).

24       In the present case, the settlement administrator mailed notices in both English and

25   Spanish to each class member at his or her address listed in defendant's records; the administrator

26   updated the list of addresses by processing it through the National Change of Address database

27   maintained by the United States Postal Service.  Dkt. No. 51-2 ¶¶ 4–6.  The notice itself clearly

28   advises class members of their options:  class members may (1) participate in the settlement,

United States District Court
Northern District of California

which does not require any further action; (2) object to the settlement; or (3) exclude him- or herself from the settlement. *Id.*, Ex. A at 2; *see Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (citation omitted)).  Additionally, the notice contains information about a website where class members may view posted information about the settlement. *Id.*

Of the 699 mailed notices, 587 were successfully delivered after several rounds of address tracing.  Dkt. No. 58-1 ¶ 5.  Of the 86 remaining class members for whom mail was initially undeliverable, seven received notice via WhatsApp messaging, and 19 provided new addresses to the settlement administrator and subsequently received mailed notice. *Id.* ¶ 6.  Ultimately, 613 class members, or 87.7% of the class, received actual notice of the proposed settlement. *Id.* ¶ 8.  Two members of the settlement class timely requested exclusion from the class, and no settlement objections were filed (nor have any been received by the Court). *Id.* at 3.

The Court is satisfied that this method of providing notice was reasonably calculated to provide notice to class members and was the best form of notice available under the circumstances. *Cf. SBCSC Mgmt.*, 944 F.3d at 1042, 1046 n.7 (observing that a response rate of 18.5% of the class "seem[ed] low for a scenario in which class members stood to receive hundreds of dollars if they made a claim," and was an indication that class members may not have received adequate notice of the settlement).

### 3.   Approval of the Settlement

Rule 23(e) requires district courts to approve a class action settlement "only on finding that it is fair, reasonable, and adequate" after considering these factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   i.   The costs, risks, and delay of trial and appeal;
>   ii.  The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   iii. The terms of any proposed award of attorney's fees, including timing of payment; and
>   iv.  Any agreement required to be identified under Rule 23(e)(3); and

7

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  This list of factors is not intended to displace any factors currently considered by courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e) advisory committee note to 2018 amendment.

In the Ninth Circuit, "a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight '*Churchill* factors.'"  *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (citations omitted).  These *Churchill* factors include:

> (1) The strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2009) (citing *Churchill Vill.*, 361 F.3d at 576–77)).  "Only when the district court explores these factors comprehensively can the settlement award survive appellate review."  *Kim*, 8 F.4th at 1178 (citation and internal quotation marks omitted).

However, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review."  *Id.* at 1179 (citation omitted).  The Ninth Circuit recently held that Rule 23(e)(2), as revised in 2018, requires courts "to go beyond our precedent" by accounting for the terms of any proposed award of attorneys' fees when determining whether the relief provided for the class is adequate.  *Briseño*, 998 F.3d at 1023–26; *see also Kim*, 8 F.4th at 1179.  Specifically, in reviewing settlements struck both before and after class certification, "district courts must apply *Bluetooth*'s heightened scrutiny" to examine whether the attorneys' fee arrangement shortchanges the class.  *Id.* at 1023–25.  The *Bluetooth* court identified three signs of such shortchanging:

> (1) class counsel's receipt of a disproportionate distribution of the settlement;
> (2) a "clear sailing" agreement "providing for the payment of attorneys' fees separate and apart from class funds"; and
> (3) an arrangement whereby fees that awarded are reverted to the defendants, rather than added to the class fund.

1    654 F.3d at 947.

2        Accordingly, as relevant to this case, the Court considers the following factors: (1) strength

3    of the plaintiffs' case and risks of further litigation, including the risk of maintaining class action

4    status through trial; (2) amount of settlement; (3) the extent of discovery completed and the stage

5    of the proceedings; (4) the experience and views of class counsel; (5) reaction of the class

6    members; (6) effectiveness of the plan for distribution; (7) equitable treatment of class members;

7    and (8) proposed attorneys' fee award and absence of collusion between class counsel and the

8    defendant.  No governmental participant is present, so the Court does not address this factor.

9                    **a.        Strength of plaintiffs' case and risks of further litigation**

10        As discussed in the Court's prior order (Dkt. No. 37), plaintiffs assert that they face

11    substantial uncertainty in proceeding with the litigation.  For example, plaintiffs acknowledge that

12    two of the named plaintiffs and half of the proposed class members had signed binding arbitration

13    agreements precluding participation in class action litigation. Dkt. No. 9 at 17–18.  Thus, any

14    class members bound by such arbitration agreements might have been unable to proceed with their

15    claims in this action. *See, e.g., Stern v. Gambello*, 480 F. App'x 867, 869–70 (9th Cir. 2012)

16    (approving of district court's consideration at the final approval stage of, among other things, the

17    risk that defendant would succeed in enforcing arbitration in another state).  Moreover, as

18    plaintiffs explained, because Mesa intended to oppose class certification on this and other grounds,

19    plaintiffs faced a considerable risk that they could not obtain or maintain class action status on

20    behalf of the proposed class. *See* Dkt. No. 26 at 17.

21        "In light of the risks and costs of continued litigation, the immediate rewards to class

22    members are preferable." *Bellinghausen*, 306 F.R.D. at 255 (finding immediate payout to class

23    outweighed the risks and costs of further litigation, where each class member was offered a pro

24    rata share of the settlement and the average amount of recovery was "just north of $454.48").

25    Here, each class member is to receive a pro rata share of the net settlement based on the number of

26    qualifying workweeks he or she worked, and the average recovery is estimated as $2,031.47.  Dkt.

27    No. 51-2 ¶ 13.  The settlement administrator must make disbursements to the entire class "as soon

28    as practicable" after receiving the settlement funds from the defendant, which must be sent to the

United States District Court
Northern District of California

9

1    administrator within 15 days after the effective date of the settlement.  Dkt. No. 48 at 2, 8.

2    Although the class members (or some of them) arguably might have received more if they had

3    proceeded to trial and prevailed on the merits of their case, they also faced a risk that the resulting

4    recovery would be smaller than what is currently expected.  Further, the benefit of receiving an

5    award in the immediate future has its own value.  *Bellinghausen*, 306 F.R.D. at 255.

6         For these reasons, these factors weigh in favor of approving the settlement.

7                    **b.      Amount of the settlement**

8         When considering the fairness and adequacy of the amount offered in settlement, "it is the

9    complete package taken as a whole, rather than the individual component parts, that must be

10   examined for overall fairness."  *Id.* at 256 (citation omitted).  "The fact that a proposed settlement

11   may only amount to a fraction of the potential recovery does not, in and of itself, mean that the

12   proposed settlement is grossly inadequate and should be disapproved."  *Linney v. Cellular Alaska*

13   *P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citation and quotation marks omitted).

14        In the present case, the $1,850,00 gross settlement amount is approximately 46% of

15   defendant's estimated $4,014,813.44 maximum potential liability at trial, assuming all class

16   members were able to obtain a recovery.  Dkt. No. 26-2 ¶ 10; Dkt. No. 51-1 at 7.  The $1,420,000

17   net settlement amount is approximately 35% of defendant's estimated maximum potential

18   liability.  Viewing the settlement as a whole, the Court finds that the amount offered in the

19   settlement is fair.  *See, e.g.*, *Uschold v. NSMG Shared Servs.*, 2020 WL 3035776, at *29 (N.D.

20   Cal. 2020) (approving settlement where net settlement amount reflected a 12% recovery of

21   potential damages); *Bellinghausen*, 306 F.R.D. at 256 (approving wage-and-hour class action

22   settlement where gross settlement amount was between 11% and 27% of plaintiffs' potential

23   recovery).

24        Thus, the amount offered in settlement also weighs in favor of final approval.

25                    **c.      Extent of discovery completed and the stage of the proceedings**

26        The parties agreed to participate in a private mediation early in these proceedings on

27   August 8, 2020, before much substantive litigation had occurred, and at which point they agreed to

28   suspend discovery.  Dkt. No. 26-2 ¶ 6.  Prior to the mediation, defendant provided plaintiffs with

United States District Court
Northern District of California

10

"a sampling of payroll data, including shifts, class members, average wages, and payroll data for assessing Defendant's liability and calculating damages, including the number of shifts worked by class members and their average wage rate." *Id.* Class counsel aver that they spent a little over 20 hours reviewing, analyzing, and emailing concerning defendant's document production. Dkt. Nos. 49-3, 49-5. While plaintiffs did not engage in extensive discovery, minimal formal discovery by itself is not a bar to settlement so long as the there is no indication that plaintiffs were inadequately prepared for the settlement discussions. *See Linney*, 151 F.3d at 1239 ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.") (citation omitted). The Court finds no indication that plaintiffs were unprepared for the mediation.

This factor, too, weighs in favor of final approval.

### d.     The experience and views of counsel

The experience and views of counsel also weigh in favor of approving the settlement. Class counsel each state that they have over 20 years of experience practicing law, with substantial experience in employment litigation on behalf of migrant and agricultural laborers. Dkt. No. 49-2 ¶¶ 2–3; Dkt. No. 49-4 ¶ 5. In a prior order, the Court found that class counsel met the adequacy requirement. Dkt. No. 37 at 9–10. Class counsel opine that the proposed settlement is fair and reasonable, and that final approval of the settlement would best serve the interests of the class. Dkt. No. 51-1 at 8. "The court gives considerable weight to class counsel's opinions regarding the settlement due to counsel's experience and familiarity with the litigation." *Uschold*, 2020 WL 3035776, at *32–33 (N.D. Cal. 2020) (finding counsel's assertion that the settlement was fair, adequate, and reasonable supported final approval of the settlement, where counsel had extensive experience litigating wage-and-hour class actions); *Ontiveros*, 303 F.R.D. at 371 (same).

This factor weighs in favor of final approval.

### e.     Reaction of class members

Plaintiffs report that there were no objections to the settlement and that only two members chose to exclude themselves from the settlement. Dkt. No. 51-2 ¶ 12. The Court has not received

11

any objections to date, nor did any objector appear at the final fairness hearing.  In addition, plaintiffs advise that no class members provided comments critical of the settlement.  Dkt. No. 58 at 3.  This factor thus weighs in favor of approving the settlement.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (holding that district court had discretion to find a favorable reaction to settlement where only 54 class members submitted objections, out of the 376,301 who had been sent notices); *Bellinghausen*, 306 F.R.D. at 258 ("Courts have repeatedly recognized that an absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to the class members.") (citation and internal quotation marks omitted).

### f.     Equitable treatment of class members

As discussed in this Court's prior order (Dkt. No. 37 at 19–21), the proposed distribution of the settlement does not appear to grant preferential treatment to any class members.  The parties did not indicate either in their papers or at the fairness hearing that any developments had occurred that would alter the Court's prior analysis.  Therefore, this factor weighs in favor of settlement approval.

### g.     Proposed attorneys' fee award and absence of collusion

Finally, as directed by the Ninth Circuit in *Briseño* and *Kim*, this Court must account for the terms of the proposed attorneys' fee award when determining whether the relief provided for the class is adequate.  998 F.3d at 1023–26; 8 F.4th at 1179.  Specifically, the Court must examine the attorneys' fee arrangement for the three signs of collusion identified by the Ninth Circuit in *Bluetooth* and described above.  *Briseño,* 998 F.3d at 1023–25 (citing *Bluetooth*, 654 F.3d at 947).

First, the Court compares the *actual* payout to the class to the amount of attorneys' fees requested.  *See Bellinghausen*, 306 F.R.D. at 258–59 (applying the *Bluetooth* factors).  After making the deductions for attorneys' fees, costs, and the named plaintiffs' incentive awards, the total potential actual payout to the class is $1,420,000.  Plaintiffs' request of $400,000 in attorneys' fees is thus 28.2% of the total potential actual payout to the class, which is reasonable. *See Camilo v. Ozuna*, 18-cv-02842-VKD, 2020 WL 1557423, at *21–22 (N.D. Cal. Apr. 1, 2020) (court "not prepared to say" that class counsel's request in fees, about 52% of the actual total

United States District Court
Northern District of California

payout to class, was a sign of collusion); *Bellinghausen*, 306 F.R.D. at 258–59 (where amount of attorneys' fees requested was 38.5% of total actual payout to class, such request was "reasonable").

The remaining two warning signs—a "clear sailing" provision and an arrangement for fees not awarded to the class to revert to the defendants—are not present here.  Although the parties agreed that a request for attorneys' fees would not exceed $400,000, Mesa did not agree that a specific amount of fees should be awarded and did not agree to not oppose plaintiffs' motion for attorneys' fees.

For these reasons, the Court is satisfied that the settlement was not the result of collusion between the parties.  Because these and the preceding fairness factors suggest that the settlement is fair, adequate and reasonable, final approval of the settlement is appropriate.

**B.     Motion for Attorneys' Fees, Costs, and Incentive Awards[4]**

Next, the Court determines whether the requested attorneys' fees, costs, and class representatives' incentive awards that plaintiffs now seek are fair and reasonable.[5]

**1.     Attorneys' Fees**

"The Ninth Circuit has approved two methods of determining attorneys' fees in cases where, as here, the amount of the attorneys' fee award is taken from the common fund set aside for the entire settlement: the 'percentage of the fund' method and the 'lodestar' method." *Bellinghausen*, 306 F.R.D. at 259–60 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).  "The district court retains discretion in common fund cases to choose either method," *id.*, but the Ninth Circuit recommends that district courts apply one method, using the other to cross-check the appropriateness of the amount of requested attorneys' fees.  *See Bluetooth*, 654 F.3d at 944.  "Under either approach, '[r]easonableness is the goal, and mechanical

---

[4] Although plaintiffs briefed their request for incentive awards in their motion for final approval of the class settlement, Dkt. No. 51-1 at 11–13, the Court addresses this request in connection with the plaintiffs' motion for attorneys' fees and costs.

[5] Under the terms of the settlement agreement, the gross settlement amount does not include the cost of settlement administration, which is to be paid in full by the defendant separately.  Dkt. No. 48 at 3; Dkt. No. 51-2 ¶ 15.  For this reason, the Court does not consider whether the costs of settlement administration are fair and reasonable.

or formulaic application of either method, where it yields an unreasonable result, can be an abuse

of discretion.'" *Bellinghausen*, 306 F.R.D. at 260 (quoting *Fischel v. Equitable Life Assurance*

*Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002)).

Because this case involves a common settlement fund with an easily quantifiable benefit to

the class, the Court will primarily determine attorneys' fees using the benchmark "percentage of

the fund" method. *See Kim*, 8 F.4th at 1181 ("The percentage-of-recovery approach may be used

where defendants provide monetary compensation to the plaintiffs and class benefit is easy to

quantify") (citation and internal quotation marks omitted); *see also Bluetooth*, 654 F.3d at 942

(percentage method is particularly appropriate in common fund cases, where "benefit to the class

is easily quantifiable"). "Under this method, the court simply awards the attorneys a percentage of

the fund sufficient to provide class counsel with a reasonable fee." *Kim*, 8 F.4th at 1181 (citation

and internal quotation marks omitted). Because "[i]njunctive relief is inherently difficult to

monetize," a district court should generally avoid valuing it altogether when determining

proportional attorneys' fees. *Id.*

The Court will also apply a lodestar cross-check to ensure the award's reasonableness.

*Bellinghausen*, 306 F.R.D. at 260 (citing *Vizcaino*, 290 F.3d at 1047).

### a.    Reasonableness of the Percentage

The Ninth Circuit has consistently approved a "benchmark" award of 25% of the common

fund. *Bluetooth*, 654 F.3d at 947; *Staton*, 327 F.3d at 952. Here, class counsel's request for fees

of $400,000 is 21.6% of the global settlement fund, which does not include the estimated value of

injunctive relief. Dkt. No. 49-1 at 2. In this district, other judges reviewing wage-and-hour class

action settlements typically have approved attorneys' fee awards over the 25% benchmark in cases

involving more protracted and complex litigation than in this case. *See Rivas v. BG Retail, LLC*,

No. 16-cv-06458-BLF, 2020 WL 264401, at *8 (N.D. Cal. Jan. 16, 2020) (approving attorneys'

fees totaling 45% of the settlement fund); *Smith v. American Greetings Corp.*, 14-cv-02577-JST,

2016 WL 362395, at *8–9 (N.D. Cal. Jan. 29, 2016) (approving attorneys' fees totaling 28% of the

settlement fund); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, at *11–12

(N.D. Cal. Dec. 11, 2015) (approving attorneys' fees totaling 33% of the settlement fund); *Moore*

1    *v. PetSmart, Inc.*, No. 5:12-cv-03577-EJD, 2015 WL 5439000, at *11 (N.D. Cal. Aug. 4, 2015)

2    (approving attorneys' fees totaling 27% of the settlement fund).

3          "The most critical factor in determining appropriate attorneys' fee awards is the degree of

4    success obtained." *Smith*, 2016 WL 362395, at *8 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436

5    (1983)).  Here, the results obtained support a 21.6% award of attorneys' fees, because the net

6    settlement is 35% of defendant's estimated maximum total liability.  Dkt. No. 26-2 ¶ 10.  This net

7    settlement amount falls well within the range found acceptable in other wage-and-hour class

8    actions.  *See Camilo*, 2020 WL 1557428, at *17 (net settlement was 44% of defendants' potential

9    liability); *Rivas*, 2020 WL 264401, at *5 (2.4% net recovery to the class was not reason to reject

10   the settlement).  Given the risks of further litigation, Dkt. No. 9 at 17–18, the class has achieved a

11   high degree of success.

12         Further, although the Court excludes the injunctive relief obtained in calculating the total

13   amount of the settlement, *see Kim*, 8 F.4th at 1181, "[t]he fact that counsel obtained injunctive

14   relief in addition to monetary relief for their clients is, however, a relevant circumstance to

15   consider in determining what percentage of the fund is reasonable as fees." *Staton*, 327 F.3d at

16   946.  Here, plaintiffs have obtained injunctive relief not previously provided: meal and rest

17   periods, payment for nonproductive work and pre-shift activities, payment for rest periods, and

18   compensation for tools and equipment.  Dkt. No. 48 at 5–6.  As plaintiffs note, this injunction

19   obligates defendant to take actions that it had not already taken.  Dkt. No. 49-1 at 3–4; Dkt. No.

20   35-2 ¶¶ 5–6; *cf. Koby*, 846 F.3d at 1079–80 (injunctive relief "worthless" where defendant was not

21   obligated "to do anything it was not already doing").

22         Finally, "[t]he existence or absence of objectors to the requested attorneys' fee is a factor

23   in determining the appropriate fee award." *Bellinghausen*, 306 F.R.D. at 261 (citation omitted).

24   Here, at least 87.7% of the class received notice of their right to object to the attorney fee award

25   set forth in the settlement agreement, but not one class member objected.  Dkt. No. 58 at 3; Dkt.

26   No. 58-1 at 3–4.  "[T]he lack of objection from any class member supports the attorneys' fee

27   award." *Smith*, 2016 WL 362395, at *9.

28         Thus, class counsel's request for an attorneys' fee award in the amount of 21.6% of the

United States District Court
Northern District of California

1  common fund—i.e., $400,000—appears to be reasonable.  The Court proceeds to cross-check the

2  requested fees against the lodestar.

3  **b.  Lodestar Cross-Check**

4  The Court now compares the requested award percentage of 21.6% to the lodestar.

5  Although this "extra step" is "not required," *In re Google Referrer Header Privacy Litig.*, 869

6  F.3d 737, 748 (9th Cir. 2017), *vacated on other grounds by Frank v. Gaos*, 139 S. Ct. 1041

7  (2019), the lodestar "provides a check on the reasonableness of the percentage award." *Vizcaino*,

8  290 F.3d at 1050.  "The lodestar figure is calculated by multiplying the number of hours the

9  prevailing party reasonably expended on the litigation (as supported by adequate documentation)

10  by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654

11  F.3d at 941.  The Court may increase or decrease the lodestar by a multiplier that reflects factors

12  such as "the quality of representation, the benefit obtained for the class, the complexity and

13  novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

14  The Court will first determine whether the hourly fee rate provided by counsel is

15  reasonable and then will address whether the number of hours billed was reasonably expended.

16  **i.  Reasonable rate**

17  "In determining the reasonable hourly rate, the district court should be guided by the rate

18  prevailing in the community for similar work performed by attorneys of comparable skill,

19  experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th

20  Cir.1986), *amended on other grounds by* 808 F.2d 1373 (9th Cir. 1987).  The relevant community

21  for the purposes of determining the prevailing market rate is generally the "forum in which the

22  district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

23  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

24  community, and rate determinations in other cases, particularly those setting a rate for the

25  plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers

26  of America v. Phelps Dodge Co.*, 896 F.2d 403, 407 (9th Cir. 1990).  The Court is required to

27  consider cases that were decided relatively contemporaneously to the time the work was

28  performed.  *See Camacho*, 523 F.3d at 981.

16

1    Here, class counsel request fees based on the hourly rates of two attorneys: Dawson

2    Morton ($725/hour), who has over 20 years of experience, all of which have been spent litigating

3    employment disputes on behalf of agricultural workers, and Santos Gomez ($750/hour), who has

4    nearly 30 years of experience, most of which has been spent litigating employment disputes on

5    behalf of low-wage workers.  Dkt. No. 49-2 ¶ 2; Dkt. No. 49-4 ¶¶ 3–5, 7.  Class counsel have not

6    supported their requested rates with affidavits from other attorneys in the relevant community.

7    However, the Court's own review reveals that other judges in this district have determined that

8    rates of up to $800 are appropriate in wage-and-hour class actions for lawyers with similar

9    experience.  *See Rivas*, 2020 WL 264401, at *7 (hourly rate of $725 reasonable for attorney with

10   25 years of experience); *Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at

11   *10–11 (N.D. Cal. Apr. 26, 2013) (eight years ago, approving hourly rate of $700 for attorney

12   with 26 years of experience).  Moreover, in 2020, another judge in this district awarded Mr.

13   Morton and Mr. Gomez their requested rates of $725/hour and $750/hour in a matter similar to the

14   instant case.  *See Gomez-Gasca v. Future AG Mgmt., Inc.*, No. 19-CV-2539-YGR, 2020 WL

15   6149688, at *5 (N.D. Cal. Oct. 20, 2020).

16   Based on the fees regularly awarded in comparable actions in this district, and the fact that

17   Mr. Morton and Mr. Gomez practice almost exclusively in the area of wage-and-hour class actions

18   on behalf of migrant and agricultural workers or other low-wage workers, the Court concludes that

19   Mr. Morton's requested rate of $725 and Mr. Gomez's requested rate of $750 are both reasonable.

20                    **ii.      Reasonable hours**

21   In calculating hours reasonably expended, the Court should exclude hours that are

22   "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 433–34.

23   Over the one year and nearly eight months of this litigation, class counsel have billed a

24   total of approximately 297 hours.  As discussed above, the parties have not engaged in much

25   substantive litigation since this action commenced, and class counsel aver that they have spent

26   only a little over 20 hours reviewing and analyzing formal and informal discovery.  Dkt. No. 26-2

27   ¶ 6; Dkt. Nos. 49-3, 49-5.

28   The majority of hours were billed by Mr. Morton, who expended a total of 204.8 hours as

United States District Court
Northern District of California

17

1    of July 21, 2021.  Dkt. No. 49-4 ¶ 7.  At that time, he expected to spend an additional 30 hours on

2    this matter responding to class members and preparing final approval papers.  *Id.*  Mr. Gomez

3    expended a total of 91.81 hours as of July 20, 2021.  Dkt. No. 49-2 ¶ 6.  He also expected to spend

4    additional hours on this matter until the settlement is finally administered.  *Id.*

5         In this case, the Court finds that the hours expended by class counsel are reasonable given

6    the length of the lawsuit and the relative lack of disputes over the course of the litigation.  The

7    time spent does not appear to be unnecessary, duplicative, or excessive.

8                              c.        **Lodestar calculation**

9         Given class counsel's reasonable hourly rates and reasonable hours expended, Mr.

10   Morton's lodestar is $148,480, and Mr. Gomez's lodestar is $68,857.50.  That brings the total

11   lodestar calculation for class counsel to $217,337.50.  The Court then divides the total fees sought

12   by the lodestar to determine the effective multiplier.  *Bellinghausen*, 306 F.R.D. at 365.  Here, the

13   multiplier is 1.84, which the Court deems acceptable for the following reasons.

14        "Courts have routinely enhanced the lodestar to reflect the risk of non-payment in common

15   fund cases."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (citation omitted).

16   *Id.* (citation omitted).  "The purpose of this multiplier is to account for the risk Class Counsel

17   assumes when they take on a contingent-fee case."  *Id.* (citing *Hopkins v. Stryker Sales Corp.*, No.

18   11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013)).  If the multiplier falls

19   within an acceptable range, it further supports the conclusion that the fees sought are reasonable.

20   The Ninth Circuit has noted that multipliers ranging between one to four "are frequently awarded

21   in common fund cases when the lodestar method is applied."  *Vizcaino*, 290 F.3d at 1051 n.6.

22   Given the results of this action, the contingent nature of class counsel's fee arrangement, and the

23   skill required to succeed at settlement, the Court believes that the 1.84 multiplier is appropriate,

24   especially where the sought percentage of 21.6% is below the "presumptively reasonable

25   benchmark amount [25%] in this Circuit."  *Bellinghausen*, 306 F.R.D. at 265; *see also Smith*, 2016

26   WL 362395, at *9 (finding multiplier of 1.8 in wage-and-hour class action "within the range of

27   awards in similar cases").

28        For these reasons, the attorneys' fees requested are reasonable and the Court will award

1    class counsel the $400,000 sought.

2              **2.    Costs**

3              Because "an attorney who has created a common fund for the benefit of the class is entitled

4    to reimbursement of reasonable litigation expenses from that fund," "courts throughout the Ninth

5    Circuit regularly award litigation costs and expenses—including reasonable travel expenses—in

6    wage-and-hour class actions." *Bellinghausen*, 306 F.R.D. at 265 (citation omitted).  The

7    settlement agreement contemplates litigation costs of up to $7,500, to compensate class counsel

8    for work already performed in this case and all work remaining to be performed.  Dkt. No. 48 at 6.

9    Class counsel submitted an updated list of itemized costs on September 21, 2021; in total, class

10   counsel requests costs of only $4,315.74. Dkt. No. 49-1; Dkt. No. 55-1.  According to class

11   counsel, these costs account for filing and service fees, copying and mailing, legal research,

12   mediation expenses, and translation expenses.  Dkt. No. 49-2 at 7; Dkt. No. 49-4 ¶ 8; Dkt. No. 49-

13   6.

14             The Court concludes that these are reasonable litigation expenses incurred for the benefit

15   of the class and therefore grants class counsel's request for $4,315.74 in costs.

16             **3.    Incentive Awards**

17             Each named plaintiff requests an incentive award of $7,500, which is approximately 3.5

18   times the average class recovery.  Dkt. No. 51-1 at 11; Dkt. No. 51-2 ¶ 13.  "Incentive awards are

19   meant to 'compensate class representatives for work done on behalf of the class, to make up for

20   financial or reputational risk undertaking bringing the action, and, sometimes, to recognize their

21   willingness to act as a private attorney general." *Bellinghausen*, 306 F.R.D. at 266 (citing

22   *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009)).  Incentive awards are

23   "particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant

24   'reputational risk' by bringing suit against their former employers." *Id.* (citing *Rodriguez*, 563

25   F.3d at 958–59).  However, because the amount of each requested incentive award is higher than

26   the "presumptively reasonable" $5,000 payment in this district, *see Bellinghausen*, 306 F.R.D. at

27   266–67 (citing cases), the Court considers the reasonableness of the requested amount.

28             To determine the reasonableness of an incentive award, courts have generally considered

United States District Court
Northern District of California

these factors:

> (1) [T]he risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Id.* at 266 (citing cases).  Here, all plaintiffs provided declarations detailing the amount of time and effort they have spent on this case, as well as certain difficulties they say they experienced because of their roles as named plaintiffs.  Beyond an expectation of an incentive award, none has received any personal benefit as a result of the litigation.  Mr. Miguel-Sanchez describes being called out by name at workers' meetings and says that his supervisors blamed him for bringing this action.  Dkt. No. 51-5 (Decl. of William Miguel-Sanchez) ¶ 10.  Mr. Meza Estrada and Mr. Jimenez Cruz say they were pressured to leave their positions by supervisors and "the company," and both eventually left their jobs at Mesa in July 2021.  Dkt. No. 51-6 (Decl. of Luis Meza Estrada) ¶¶ 3, 9; Dkt. No. 51-7 (Decl. of Sergio Jimenez Cruz) ¶¶ 3, 9.

Further, each plaintiff has spent at least 40 hours (70-80 hours, in Mr. Miguel-Sanchez's case) attending meetings to answer class counsel's questions and provide class counsel with evidence, such as detailed notes of hours worked.  Dkt. No. 51-5 ¶¶ 4, 5, 7, 12; Dkt. No. 51-6 ¶¶ 4, 6, 8; Dkt. No. 51-7 ¶¶ 5, 6, 8.  These efforts were expended over the course of the one year and eight months during which this case has been pending.

Finally, the risk to the plaintiffs in commencing suit was not insignificant.  Plaintiffs in wage-and-hour actions may risk their reputation and ability to obtain work by bringing suit against their employers.  *Bellinghausen*, 306 F.R.D. at 266 (citing *Rodriguez*, 563 F.3d at 958–59).  In this case, plaintiffs arguably faced a heightened risk because they brought suit against their *current* employer.  Plaintiffs' status as class representatives also may expose them to the risk that future employers will be reluctant to hire them because of plaintiffs' public role in this litigation challenging their conditions employment.  *See id.* at 267.

Thus, the Court finds that the requested incentive awards of $7,500 per named plaintiff are appropriate here in light of the time and effort plaintiffs have expended for the benefit of the class

1   and the risks associated with initiating the litigation.  Accordingly, the Court awards each named

2   plaintiff an incentive award of $7,500.

3   **IV.     CONCLUSION**

4         For the reasons described above, the Court grants plaintiffs' motion for final approval of

5   the settlement.  The Court also grants plaintiffs' motion for attorneys' fees, costs, and incentive

6   awards.  Specifically, the Court awards the following costs: $400,000 in attorneys' fees, $4,315.74

7   in litigation costs, and $7,500 to each named plaintiff as class representatives.

8         **IT IS SO ORDERED.**

9   Dated: October 20, 2021

VIRGINIA K. DEMARCHI
United States Magistrate Judge